FRED B. HULSE, O. W. WATKINS, JAMES M. REEVES, C. O. INMAN and CHARLES M. BLACKMAR, Members of the Advisory Committee, Informants, v. C. L. CRIGER, Respondent, No. 42810—247 S. W. (2d) 855.

Court en Banc, April 14, 1952.

*P. L. Edwards, Harry Gershenson* and *James A. Finch, Jr.,* for Informants.

28

*Albert Copaken* and *Sylvia Copaken* for respondent.

*Leonard E. Martin,* Chairman, The Unauthorized Practice of Law Committee of the Bar Association of St. Louis, and *Theodore E. Beckemeier* for and on Behalf of the Bar Association of St. Louis, amicus curiae.

*Joseph Boxerman* for St. Louis Real Estate Board, amicus curiae.

32

*Kenneth Teasdale, Bourne Bean* and *Cobbs, Blake, Armstrong, Teasdale & Roos* amicus curiae.

*M. J. Doherty* and *Albert Miller* for George W. Curran, for Himself and for and on Behalf of the Lawyers Association of St. Louis, amici curiae.

HYDE, J.—This is an information by the Advisory Committee of the Missouri Bar Administration alleging that C. L. Criger, a licensed real estate broker of Kansas City, has engaged in the unlawful practice of law, as a practice and as a business. Informants seek to have respondent enjoined from practicing law and punished for contempt of this Court. They move for judgment on the pleadings which are the information and answer.

The acts alleged to constitute such practice which respondent admits in his answer are as follows: "Respondent admits that in numerous transactions in the general and ordinary course of his business as a licensed real estate broker and incidental thereto, respondent, either in his own person or through his agents, servants and employees, has prepared for persons other than himself, many instruments relating to and affecting real estate and the title to real estate, including deeds conveying real estate, deeds of trust and mortgages encumbering real estate, promissory notes secured by such deeds of trust or mortgages; leases of real estate, options for purchase, contracts of sale and agreements."

Respondent admits he has not been licensed to practice law but denies that he "has been engaged in the unlawful practice of law or doing law business"; and "denies that he has given legal advice to the parties to such instruments as to the legal effect thereof." Respondent also admits that "in his own person, or through his agents, servants and employees, customarily in each instance conferred with one or more of the parties to the transaction or their agents; elicited in such conference what were considered to be the [857] pertinent facts; in the light of the information elicited and the information contained in the abstract of title selected and determined upon the blank form or forms to be used and then prepared one or more of the instruments mentioned by filling in such form or forms in such manner as the respondent himself or the agent, servant or employee of the respondent preparing the same in his or her judgment, deemed proper in the light of the information elicited in such conference and the information contained in the abstract of title."

Respondent also admits that he was not a party to any of the instruments so prepared by him; that his usual connection (but he does not claim his exclusive connection) with transactions, as a part of which said instruments were prepared, was in consummation or closing of transactions procured by him as a real estate broker and for which he received commissions for his services as such;

and that "in almost all the transactions in which the respondent and his agents, servants or employees prepared legal instruments in the manner and circumstances hereinbefore mentioned, the respondent had been employed as a real estate broker to procure purchasers for the properties involved in the transactions and had procured purchasers for such properties and had become entitled to and was paid commissions for his services as a real estate broker in procuring such purchasers." Respondent also admitted he charged one or both of the parties for his preparation of these instruments but stated he made only nominal charges for mere clerical services. In his brief he says that these charges were for the cost of the forms used and his clerical help.

Informants contend that what respondent admits doing is the practice of law and that a test as to whether the particular transaction or form is simple or complex is not a satisfactory or logical solution. Amicus Curiae briefs of Bar Associations take the same position.

Respondent contends that his admitted acts were properly the business of a real estate broker which he had a right and even a duty to do. He says that preparing and completing instruments necessary to the closing of real estate transactions is one of the most important services performed by realtors, because the statute of frauds requires written instruments in real estate transactions. He also relies upon the Missouri Real Estate License Law (RSMo 1949, Chap. 339, VAMS) as authorizing "all the things real estate brokers were then and had been customarily doing." Respondent further says that to deny him the right to do these things would violate the equal protection and due process clauses of the state and federal constitutions (Sec's. 2 and 10, Art. 1, Const. of Mo., Sec. 1, Art. 14, Const. of U.S.) and the provisions of Art. 2 of the Const. of Mo. providing for the distribution of powers among the three departments of the state government. Briefs amicus curiae for the St. Louis Real Estate Board and the Missouri Real Estate Association disclaim any right to make a separate charge, or to prepare instruments affecting rights for persons not represented in a real estate transaction, but do argue for the right of a real estate broker to prepare standardized instruments incident to the sale or lease of real estate in transactions in which he acts as broker.

The controlling principles are: Only the judicial department of the government has power to license persons to practice law. "Statutes may aid by providing machinery and criminal penalties, but may not extend the privilege of practicing law to persons not admitted to practice by the judicial department." (Lowell Bar Association v. Loeb, 315 Mass. 176, 52 N.E.(2d) 27; Opinion of the Justices to the Senate. 289 Mass. 607, 194 N. E. 313; Clark v. Austin, 340 Mo. 467, 101 S.W.(2d) 977; In Re Richards, 333 Mo. 907, 63 S.W.(2d) 672.) Thus the judicial department is necessarily the sole

arbiter of what constitutes the practice of law. In this connection it should be noted that Sec. 339.010 of the Real Estate License Law specifically provides: "Nor shall this chapter be construed to include in any way the service rendered by an attorney at law in the performance of his duties as such." The duty of this Court is not to protect the Bar from competition but to protect the public from being advised or represented [858] in legal matters by incompetent or unreliable persons. Our purpose must be to make sure "that legal services required by the public, and essential to the administration of justice, will be rendered by those who have been found by investigation to be properly prepared to do so by conforming to strict educational standards, and who demonstrate that they have the character to conform to higher standards of ethical conduct than are ordinarily considered necessary in business relations which do not involve the same fiduciary and confidential relationships." (Curry v. Dahlberg, 341 Mo. 897, 112 S.W.(2d) 345.) These are the reasons for our high standards of admission to the Bar. Furthermore, for these same reasons, prevention of persons, not admitted to the Bar, from acts amounting to the practice of law does not violate the constitutional provisions invoked.

This question of real estate brokers has been considered in several states. In Cowern v. Nelson, 207 Minn. 642, 290 S.W. 795, an injunction against a realtor was modified to eliminate "any restraint on the defendant, when acting as a broker for the parties, or as agent for one of them, to a sale or trade or lease of property or to a loan, from drawing or assisting in drawing *without charge* therefor such papers as may be incident to such transaction." (Our italics.) The Court said: "It is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic. Viewing the problem before us in that light, we do not think it would be in the interest of the public welfare to restrain brokers from drafting the ordinary instruments necessary to effectuate the closing of the ordinary real estate transaction in which they are acting. We do not think the possible harm which might come to the public from the rare instances of defective conveyances in such transactions is sufficient to outweigh the great public inconvenience which would follow if it were necessary to call in a lawyer to draft these simple instruments."

In Childs v. Smeltzer, 315 Pa. 9, 171 Atl. 883, the Court held that a person, who was a stenographer and notary public, was illegally practicing law in drawing a great variety of legal instruments including wills. However, the Court limited its decision as follows: "A number of realty boards have filed briefs as amici curiae in which

they envisage dire results to real estate brokers if laymen are prohibited from drafting legal instruments. There can be no objection to the preparation of deeds and mortgages or other contracts by such brokers so long as the papers involved pertain to and grow out of their business transactions and are intimately connected therewith. The drafting and execution of legal instruments is a necessary concomitant of many businesses, and cannot be considered unlawful. Such practice only falls within the prohibition of the act when the documents are drawn in relation to matters in no manner connected with the immediate business of the person preparing them, and when the person so drafting them is not a member of the bar and holds himself out as specially qualified and competent to do that type of work. A real estate broker is not prohibited from drawing a deed of conveyance or other appropriate instrument relating to property of which he or his associates have negotiated a sale or lease.''

In this case, the Supreme Court of Pennsylvania, referred to the concurring opinion of Pound, J. in People v. Title Guaranty & Trust Co., 227 N. Y. 366, 380, 125 N.E. 666, 670, quoting part of the following statement: ''This does not imply that a real estate broker may not prepare leases, mortgages, and deeds, or that an installment house may not prepare conditional bills of sale, in connection with the business and as a part thereof. The preparation of the legal papers may be ancillary to the daily business of the actor or it may be the business itself. The emphasis may be upon the services of the broker or the business of the trader, or it may be upon the practice of law.'' (See also LaBrum v. [859] Commonwealth Title Co., Pa., 56 Atl. (2d) 246.)

In Commonwealth v. Jones & Robbins, 186 Va. 30, 41 S.E.(2d) 720, a definition of the practice of law was approved to the effect that ''one is deemed to be practicing law, whenever * * * (2) One, other than as a regular employee acting for his employer, undertakes, with or without compensation, to prepare for another legal instruments of any character, other than notices or contracts incident to the regular course of conducting a licensed business.'' The Court held that simple contracts of sale obtained by real estate brokers from a buyer, without charge, are included in the words ''contracts 'incident to the regular course of conducting a licensed business'.'' However, as to a deed the Court said: ''It is a muniment of title and must become a matter of permanent record. Such instruments, in this sense, are not incidental to the conduct of a real estate brokerage business. The broker makes a separate and distinct charge for the preparation of each such instrument, which it seems he would not do if the preparation of such papers was a mere incident to the conduct of his business. * * * Usually the instruments whereby title passes from the seller to the purchaser are not prepared, executed or delivered until after the title has been examined and approved by the attorney for the purchaser. As a practical solution of the question, it was

deemed advisable to permit a real estate broker to prepare simple contracts of sale, options, leases, etc., and to prohibit him from preparing legal instruments whereby the legal title to property passes from the seller to the purchaser." The Court ordered: "A decree declaring that the preparation of deeds, deeds of trust, mortgages and deeds of release by real estate brokers constitutes the illegal practice of law." In Keyes Co. v. Dade County Bar Assn., 46 So.(2d) 605, the Supreme Court of Florida reached substantially this same result.

The case upon which informants most strongly rely is In Re Gore, 58 Ohio App. 79, 15 N.E.(2d) 968, which upheld a judgment that a real estate broker was engaging in the unauthorized practice of law in "making for others the determination of what constitutes a proper blank and then filling in what he conceives to be the proper substance to carry out the transaction." This ruling covered contracts between the seller and purchaser in instances where he was the acting broker as well as deeds and mortgages essential to the consummation of the deal. However, the Supreme Court of Ohio (without mentioning the Gore case but considering the Ohio cases cited therein as controlling) in Gustafson v. V. C. Taylor & Sons, 138 Ohio 392, 35 N.E.(2d) 435, ruled as follows: "The sole question presented by the plaintiffs' appeal is whether the defendant has violated this rule by merely filling printed blank forms of contract for the purchase of realty. More specifically, does the filling of these printed blank forms require the exercise of legal skill, or does it constitute merely the clerical service of recording the stated agreement of the parties to the transaction? This Court finds itself in agreement with the reasoning and conclusion of the lower courts to the effect that the supplying of simple, factual material such as the date, the price, the name of the purchaser, the location of the property, the date of giving possession and the duration of the offer requires ordinary intelligence rather than the skill peculiar to one trained and experienced in the law."

Other cases discussed in the briefs, concerning preparation of deeds and other legal instruments (and which do not so directly concern real estate brokers) are People v. Sipper, 61 Cal. App. Supp. (2d) 844, 142 Pac.(2d) 960; People ex rel. Atty. Gen. v. Jersin, 101 Colo. 406, 74 Pac.(2d) 668; In Re Matthews, 57 Idaho 75, 62 Pac. (2d) 578; In Re Matthews, 58 Idaho 772, 79 Pac. (2d) 535; People ex rel. State Bar Assn. v. People's Stock Yards Bank, 344 Ill. 462, 176 N. E. 901; People ex rel. Illinois Bar Assn. v. Schafer, 404 Ill. 45, 87 N.E.(2d) 773; Lowell Bar Assn. v. Loeb, 315 Mass. 176, 52 N.E.(2d) 27; State ex inf. Miller v. St. Louis Union Trust Co., 335 Mo. 845, 74 S.W.(2d) 348; Clark v. Austin, 340 Mo. 467, 101 S.W.(2d) 977; State ex rel. McKittrick v. Dudley [860] & Co., 340 Mo. 852, 102 S.W.(2d) 895; Clark v. Reardon, 231 Mo. App. 666, 104 S.W.(2d) 407; Liberty Mutual Ins. Co. v. Jones, 344 Mo. 932,

130 S.W.(2d) 945; State ex rel. Wright v. Barlow, 131 Neb. 294, 268 N.W. 95; People v. Alfani, 227 N.Y. 334, 125 N.E. 671; Cain v. Merchants National Bank & Trust Co., 66 N.D. 746, 268 N.W. 719; Stewart Abstract Co. v. Judicial Comm., Tex., 131 S.W.(2d) 686; Hexter Title & Abstract Co. v. Grievance Comm., 142 Tex. 506, 179 S.W.(2d) 946; Paul v. Stanley, 168 Wash. 371, 12 Pac. (2d) 401; See also Annotations 111 A.L.R. 24, 125 A.L.R. 1175, 151 A.L.R. 783. In some of these cases, persons found to be illegally practicing law were preparing many kinds of legal instruments as a regular practice; in others they were giving advice as to the legal effect of certain methods or transactions. In some of them, in which there were only single or infrequent acts of preparing instruments, it was held that such isolated conduct did not constitute the practice of law.

We have a statute (RSMo 1949, Sec. 484.010) which makes a comprehensive definition of the practice of law and law business (which is a part of the practice of law) including "the advising or counseling for valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting or relating to secular rights." We have also stated a similar definition in Clark v. Austin, supra, (101 S.W. (2d), l.c. 982) although it does not so specifically cover the situation here. However, we recognized in the Austin case (101 S.W. (2d), l.c. 984) that "perhaps the major portion of the actual practice of law under modern conditions consists of the work of attorneys outside of any court and has nothing to do with court proceedings." In the Dudley case, supra, (102 S.W. (2d), l.c. 899) both definitions were approved and we held that a corporation (conducting a collection agency) could properly "collect debts for others provided it does not employ an attorney or promise to employ one or threaten the debtor with suit if he does not pay." In the Liberty Mutual case, supra, (130 S.W. (2d), l.c. 961), we held that lay employees could investigate the facts relating to claims and fill in printed forms prepared by counsel for the release to settle claims; and could participate in informal conferences to settle Workmen's Compensation claims. Thus we have recognized the principles so well stated by the Supreme Court of Massachusetts in the Lowell Bar Association case, supra, (52 N.E. (2d), l.c. 31): "The proposition cannot be maintained, that whenever, for compensation, one person gives to another advice that involves some element of law, or performs for another some service that requires some knowledge of law, or drafts for another some document that has legal effect, he is practising law. All these things are done in the usual course of the work of occupations that are universally recognized as distinct from the practice of law. There is authority for the proposition that the drafting of documents, when merely

incidental to the work of a distinct occupation, is not the practice of law, although the documents have legal consequences.'' The Court gave several examples including architects, insurance brokers, property valuers, auctioneers, and accountants, the work of the latter being directly involved in the decision.

It is true that a real estate broker has earned his commission when he has found a purchaser ready, willing and able to take the property at the price and upon the terms fixed by the owner. However, we know as a practical matter that he does not get his money at that time; and often there are several written offers and counter offers which result in a contract before it can be said that a purchaser has been found. It is a matter of great importance to the broker to get an agreement in writing and then to close the transaction as promptly as possible, because as a matter of practice that is usually when he gets paid. Thus he is personally concerned in the transaction and actually he is acting partly in his own interest in getting a contract signed and the deal closed. This is recognized [861] by the form of contract, used by the St. Louis Real Estate Board, as shown by our Court records, which is signed by the broker, as well as by the buyer and seller, and which provides for the seller in signing to approve not only the buyer's offer but also the commission to be paid the broker. Thus the broker's function is commercial in character and not merely advisory. As a matter of fact, what he seeks to do is to negotiate a completed deal and he often bargains to some extent with both parties to get them together. While as an agent he is required to reveal to his principal everything within his knowledge relating to the transaction and must not put himself in a position antagonistic to his interests, nevertheless, because of his personal interest in negotiating an agreement, he is not in the same completely disinterested position to give him advice about his rights and obligations as a lawyer should be. This, as well as lack of legal training, is an important reason why real estate brokers cannot be permitted to give legal advice to their customers.

However, this is also a practical reason why the completion of the contract is a part of the business of the real estate broker in the transaction; and it is usually to the interest of the seller he represents, as well as his own, to get a binding agreement completed promptly while the parties are together on its terms. Such agreements may be complicated and one or both of the parties may or should realize the need for a lawyer to prepare the contract rather than to use a standardized form; but more often they are simple enough so that such a form will suffice and the parties will wish to avoid further delay or expense by using them. So much real estate business is done in this way, without harmful results, that we do not think the public interest requires it to be changed. In this connection, we note a 1942 agreement approved in principle by the Board of Governors of the

44

American Bar Association and the Board of Directors of the National Association of Real Estate Boards (67 A.B.A. Reports 224) which provides in part as follows: "* * * when acting as broker, a realtor may use an earnest money contract form for the protection of either party against unreasonable withdrawal from the transaction, provided that such earnest money contract form, as well as any other standard legal forms used by the broker in transacting such business, shall first have been approved and promulgated for such use by the bar association and the real estate board in the locality where the forms are to be used." In view of the authorities herein above reviewed, and our conclusions above stated, we hold that completing such contracts on standardized forms under such circumstances is not unlawful practice of law.

Likewise, general warranty deed and trust deed forms are so standardized that to complete them for usual transactions requires only ordinary intelligence rather than legal training. They are in fact less complicated than contracts for sale of real estate. We know that these forms are furnished to the public at the offices of Recorders of Deeds through the state. We think the preparation of these instruments in closing transactions in which a real estate broker is acting as broker is so closely related to the transaction and the business of the broker as to be practically a part of it and that he is not engaging in unlawful practice of law to prepare them under such circumstances. The same thing is true of ordinary short term leases, notes, chattel mortgages and trust deeds in transactions which the broker procures. However, he cannot properly make separate charges, in addition to his commission, for preparing any instruments or engage in the field of conveyancing and drafting contracts or other legal instruments for the public generally, with or without separate charge. Such conduct would not be any part of his business as a real estate broker but would be placing the emphasis upon conveyancing as a practice of law instead of on his services as a broker; and it would also violate the provisions of RSMo 1949, Chap. 484.

We are mindful of the statement of Pound, J. in the Title Guaranty & Trust case, supra, (125 N.E., l.c. 670), cited by informants, and also approved in People [862] v. Lawyers Title Corp., 282 N.Y. 513, 27 N.E. (2d) 30, as follows: "I am unable to rest any satisfactory test on the distinction between simple and complex instruments. The most complex are simple to the skilled, and the simplest often trouble the inexperienced." Realizing the truth of that statement, we are, nevertheless, inclined to take the view of the Supreme Court of Massachusetts in the Lowell Bar Association case, supra, (52 N.E. (2d), l.c. 34), "We are aware that there has been said to be no difference in principle between the drafting of simple instruments and the drafting of complex ones. (Citations.) But though the

difference is one of degree, it may nevertheless be real. (Citations.) There are instruments that no one but a well trained lawyer should ever undertake to draw. But there are others, common in the commercial world, and fraught with substantial legal consequences, that lawyers seldom are employed to draw, and that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen, as has already been shown. The actual practices of the community have an important bearing on the scope of the practice of law." As to this matter of degree, it has also been well said: "Things do not have to be in broad contrast to have different practical and legal consequences. Actions take estimation from degrees, and of this life and law are replete with examples." Industrial Accident Commission v. Davis, 259 U.S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888. (See also discussion of simple forms in Liberty Mutual Ins. Co. v. Jones, 130 S.W. (2d) l.c. 958.) We think the guiding principle must be whether under the circumstances the preparation of the papers involved is the business being carried on or whether this really is ancillary to and an essential part of another business. The simplicity or complexity of the forms, the nature and customs of the main business involved, the convenience to the public, and whether or not separate charges are made, all have a bearing upon the determination of this question.

We reach the following conclusions:

First: A real estate broker, in transactions in which he is acting as a broker, may use a standardized contract in a form prepared or approved by counsel and may complete it by filling in the blank spaces to show the parties and the transaction which he has procured.

Second: A real estate broker, in transactions in which he is acting as a broker, may use standardized forms of warranty deeds, quit claim deeds, trust deeds, notes, chattel mortgages and short term leases, prepared or approved by counsel and may complete them by filling in the blank spaces to show the parties, descriptions and terms necessary to close the transaction he has procured.

Third: A real estate broker may not make a separate charge for completing any standardized forms, and he may not prepare such forms for persons in transactions, in which he is not acting as a broker, unless he is himself one of the parties to the contract or instrument.

Fourth: The required approval by counsel of standardized forms to be used in real estate transactions properly may be made either by lawyers selected by real estate brokers individually or selected by real estate boards of which they are members.

Fifth: Even in transactions in which he is acting as a broker, a real estate broker may not give advice or opinions as to the legal rights of the parties, as to the legal effect of instruments to accomplish specific purposes or as to the validity of title to real estate; and he may not prepare reservations or provisions to create estates for life or in

remainder or any limited or conditional estates or any other form of conveyance than a direct present conveyance between the parties, as provided for in standardized approved forms, to be effective upon delivery.

Sixth: A real estate broker in conferring with parties to obtain facts and information about their personal and property status, other than is necessary to fill in the blank spaces in standardized forms necessary to complete and close transactions in which he is acting as a broker, for the purpose of advising them of their rights and the action to be taken concerning them, is engaging in the practice of law.

[863] We also hold that respondent's acts in preparing legal instruments for persons in transactions in which he was not acting as a broker, making a charge therefor, amounted to the practice of law; and that his separate additional charges even in transactions in which he was acting as broker tend to place emphasis on conveyancing and legal drafting as a business rather than on his business of real estate broker. The character of this work is indicated by respondent's admissions that he "elicited in conference what were considered to be the pertinent facts" and "in the light of the information elicited and the information contained in the abstract of title, selected and determined upon the blank form or forms to be used and then prepared one or more of the instruments mentioned as the respondent * * * in his * * * judgment deemed proper." This tends to go beyond preparation of simple standardized forms and into the field of legal advice. However, since the matter had not previously been decided in this State and respondent had been frank and helpful to the Bar Administration, we think no substantial penalty should be imposed.

It is, therefore, ordered and adjudged that respondent pay a fine of One Dollar and the costs herein and henceforth cease and desist the practices we have held to be improper.

*Ellison, C.J., Conkling, Leedy, Dalton* and *Hollingsworth, JJ.,* concur; *Tipton, J.,* not sitting.