244 Ind. 214 (1963)
191 N.E.2d 711
STATE EX REL. INDIANA STATE BAR ASSOCIATION ET AL.
v.
INDIANA REAL ESTATE ASSOCIATION INC., ET AL.
No. 29,990.
Supreme Court of Indiana.
Filed July 10, 1963.
*215 Frederick R. Franklin, Royse, Travis, O'Brien & Hendrickson and Howard P. Travis, all of Indianapolis, for relators.
*216 Floyd W. Burns, Douglas J. Hill, Charles W. Culp, Cadick, Burns, Duck & Neighbours, of counsel, William J. Wood and Schortemeier, Eby & Wood, of counsel, all of Indianapolis, for respondents Indiana Real Estate Association, Inc. et al.
Patrick J. Smith, Robert D. Morgan, Marvin L. Hackman and Thompson, O'Neal & Smith, of counsel, all of Indianapolis, for respondent Indianapolis Real Estate Board.
H.H. Perry, Jr., of Albany, Georgia, Wayland B. Cedarquist, of Chicago, Illinois, Jonathan F. Ells, of Winsted, Connecticut, William L. Murphey, of Los Angeles, California, Raymond Reisler, of Brooklyn, New York, Warren H. Resh, of Madison, Wisconsin, R. Carleton Sharretts, Jr., of Baltimore, Maryland and Melvin F. Adler, of Fort Worth, Texas, for amicus curiae American Bar Association.
Kirkland, Ellis, Hodson, Chaffetz & Masters and Thomas F. Scully, of counsel, all of Chicago, Illinois, for amicus curiae National Association of Real Estate Boards.
ACHOR, J.
This is an original action brought by The Indiana State Bar Association, and others, under Rule 3-26 of this court, to enjoin the alleged unlawful practice of law by the respondents, Indiana Real Estate Association, Inc., and all licensed real estate brokers and salesmen in the state of Indiana.
We have held that this court has jurisdiction to entertain the proceedings for the reason that, inherently, and under Acts 1951, ch. 143 § 1, p. 382, being § 4-3605, Burns' 1962 Supp., this court is charged with the duty of supervising and controlling the practice of law in this state, and of issuing restraining orders and injunctions against the unauthorized *217 practice of law, whether in or out of our courts.[1]
The practice of law, in the broad sense, both in and out of the courts, is such a necessary part of, and so inexorably connected with, the exercise of the judicial power of this court, that this court is charged with the continuing responsibility of exercising its supervisory control of such practice of law.
The questions presented in this case are whether or not the use of forms of legal instruments prepared by attorneys, the selection of such forms to be used, and the insertion of words within the printed forms in connection with the real estate transactions in which they are involved, constitutes the unauthorized practice of law by respondents who are not attorneys and whether such action be enjoined as against public interest.
The respondents are duly licensed by the Indiana Real Estate Commission under Acts 1949, ch. 44, §§ 1  24, inclusive, being §§ 63-2401  63-2423, Burns' 1961 Repl. Section 9 of the above Act [§ 63-2409] provides, in part:
"Every person acting for himself, every member of a firm, partnership, association or corporation participating or engaged in the real estate brokerage or as a real estate salesman therefor shall obtain and keep renewed and wholly unrevoked a license as a real estate broker or real estate salesman as herein required."
The act further provides that the commission shall hold examinations to determine the qualifications of those asking for a license, and shall promulgate rules and regulations for the conduct of such agents and brokers.
*218 The respondents admit that they use the forms, as alleged in the petition, but deny that they are giving legal advice, directly or indirectly, in connection with their use. They further deny that they undertake to draw or prepare documents in connection with real estate transactions, "but merely fill in the blank spaces in the forms referred to in the petition," stating in their response that such does not constitute the practice of law.
The respondents further state that the forms referred to in the petition have been in all cases prepared by attorneys who are members of the bar of the state of Indiana; and that although not all the forms have been approved by The Indiana State Bar Association, these forms have been used since 1950 when an agreement was made with The Indiana State Bar Association, wherein they agreed to the use of certain of such forms by the real estate brokers, and further agreed to "approve and promulgate" other forms for use by both attorneys and relators. This agreement was originally made in 1942, and amended in 1950, and reads in part as follows:
"2. The Realtor shall not undertake to draw or prepare documents fixing and defining the legal rights of parties to a transaction. However, when acting as broker, a Realtor may use an earnest money contract form for the protection of either party against unreasonable withdrawal from the transaction, provided that such earnest money contract form, as well as any other standard legal forms used by the broker in transacting such business shall first have been approved and promulgated for such use by the Bar Association and the Real Estate Board in the locality where the forms are to be used." [Our italics.]
Although the "other standard legal forms," referred to in the above agreement, were never drafted, "approved *219 and promulgated" by the parties to this action, it is contended by the respondents that The Indiana State Bar Association has impliedly approved the use of forms, such as those specified in its petition, by the respondents; and that by reason of the prolonged failure of The Indiana State Bar Association to consummate their agreement, the Association is now estopped to object to the use of forms here placed in issue, which forms have been unilaterally prepared and approved by competent legal counsel for the respondents.
Since the court has elected to decide the case upon its merits, a ruling upon the issue of estoppel is not necessary. However, the fact of the long standing negotiations between the parties upon the issue before us is indicative of the fact that a just solution of the problem, as it relates to the parties and the general public, probably lies within the area of agreement reached by the parties, as above recited.
In our consideration of the case, we make plain that the question presented here is narrowly limited to the use of forms [prepared by attorneys], the selection of such forms to be used, and the filling in of blanks in such forms by licensed real estate brokers and agents in transactions in which they are authorized by statute to perform. There is no issue here presented with reference solely to the offering or giving of legal advice.
In some of the briefs, an attempt is made to make the issue turn upon definitions of "the practice of law." In any event, we believe that the real question here at issue is whether the selection, completion, and use of the standardized forms by brokers, in connection with real estate transactions for their clients, and here sought to be enjoined, is prohibited to them, as being the practice of law. Although *220 the practice of law is one of the oldest and most honored professions, the law itself is by no means an absolute science, the practice of which can be accurately and unequivocally defined. For example, under the early English law, some instruments were prepared by scriveners, who were neither barristers nor solicitors, although the preparation of such instruments is now universally considered to constitute the practice of law. On the other hand, persons not admitted to the practice of law are now permitted to represent clients before tax courts, etc., where formerly only attorneys were authorized to appear. These changes have come about because of the exigencies of the particular situation. So it is today with regard to the practice of law. There is a twilight zone between the area of activity which is clearly permitted to the layman, and that which is denied him. Generally, it can be said that the filling in of blanks in legal instruments, prepared by attorneys, which require only the use of common knowledge regarding the information to be inserted in said blanks, and general knowledge regarding the legal consequences involved, does not constitute the practice of law. However, when the filling in of such blanks involves considerations of significant legal refinement, or the legal consequences of the act are of great significance to the parties involved, such practice may be restricted to members of the legal profession.
As stated by the Supreme Judicial Court of Massachusetts in Lowell Bar Association v. Loeb (1943), 315 Mass. 176, 186, 52 N.E.2d 27, 34:
"But though the difference is one of degree, it may nevertheless be real. [Citing cases.] There are instruments that no one but a well trained lawyer should ever undertake to draw. But there are others, common in the commercial world, and *221 fraught with substantial legal consequences, that lawyers seldom are employed to draw, and that in the course of recognized occupations other than the practice of law are often drawn by laymen for other laymen, as has already been shown. The actual practices of the community have an important bearing on the scope of the practice of law. [Citing cases.]" See also: Cain v. Merchants Nat. Bank & Trust Co. of Fargo (1936), 66 N.D. 746, 268 N.W. 719; Hulse v. Criger (1952), 363 Mo. 26, 247 S.W.2d 855.
Thus, the question which this court must determine is where, within this "twilight zone" it is proper to draw the line between those acts which are and are not permissible to persons who are not lawyers. Obviously, the drawing of such line must be, in some respects, arbitrary, as is true of a law which fixes the permissible age at which a person may drive an automobile, or speed at which it may be driven within a particular zone, or specified time of day. Nevertheless, the issue presented is one which requires determination.
We are presented with arguments by relators as to the potential danger to the public if the real estate brokers and salesmen, who are not technicians of the law, are permitted to utilize legal forms and fill blanks therein. We are aware of the dire consequences which might, in isolated instances, result from the use of an improper form, by persons not skilled in law, but such speculative consequences cannot be made to outweigh the practicalities of the situation.
We judicially know that both the relators and respondents are sensitive to the normal needs of the business society. It cannot be urged, with reason, that a lawyer must preside over every transaction where written legal forms must be selected and used by an agent acting for one of the parties. Such a restriction *222 would so paralyze business activities that very few transactions could be expeditiously consummated. This is especially true with regard to transactions by real estate brokers, which transactions are frequently not made during generally established office hours. The Bar Association, in its brief, has expressed great concern as to the consequences of permitting the filling in of blanks in legal forms by persons not members of the bar. The possibility of an occasional improvident act in the use of such forms may not, with reason, be made the basis for denying the right to perform the same act in a thousand instances where the public convenience and necessity would seem to require it. Lawyers, themselves, on rare occasions have been known to make errors in the drafting of such forms.
The legislature has, by Acts 1949, ch. 44, §§ 1  23, p. 129 [§§ 63-2401  63-2423, Burns' 1961 Repl.], supra, recognized that the real estate brokers and salesmen perform an approved function in our business society, and has established a procedure whereby their qualification is ascertained. No issue has been raised as to the sufficiency of this examination. By this method, the legislature has attempted to establish reasonable standards for the safeguard of the public in their real estate transactions. We consider it expedient that we attempt a reconciliation of the overlapping services performed by the real estate brokers and members of the bar. We should, if possible, permit each to do those acts within their respective professions and established abilities which public convenience and necessity requires.
In reviewing the cases of other states upon the narrow issue of the use of forms incidental to the real estate brokers' business, we find that the majority have been decidedly in favor of the respondent real *223 estate brokers. In eight states which have given expression upon this issue, it is permissible for real estate brokers and agents to use and fill in the following forms, prepared by attorneys, incidental to their real estate transactions:
ARKANSAS:

Ark. Bar Assn. v. Block (1959), 230 Ark. 430, 323 S.W.2d 912; (1) Offers and Acceptances.
COLORADO:

Conway-Bogue v. Bar Assn. (1957), 135 Colo. 398, 213 P.2d 998. Receipts; options for purchase; contracts of sale; deeds; promissory notes, deeds of trust; real estate mortgages; releases of deeds of trust and mortgages; leases; notices terminating tenancy; demands to pay rent, demands to vacate.
FLORIDA:

Keys Company v. Dade County Bar Assn. (1950), [Fla.] 46 So.2d 605. Memorandum of agreement; deposit receipt, contract of sale.
MICHIGAN:

Ingham Co. Bar Ass'n. v. Neller Co. (1955), 342 Mich. 214, 69 N.W.2d 713. Purchase and sale; deeds; land contracts; mortgages; assignments of mortgages, notices to quit, et cetera, as printed by stationers.
MINNESOTA:

Cowern v. Nelson (1940), 207 Minn. 642, 290 N.W. 795. Purchase money contracts; contracts for deeds; leases; notes, mortgages; chattel mortgages; bills of sale; deeds; assignments; satisfactions, and any other instruments of conveyance.
MISSOURI:

Hulse v. Criger (1952), 363 Mo. 26, 247 S.W.2d 855. Warranty deeds; quit claim deeds; trust deeds; notes; chattel mortgages, short term leases.

*224 VIRGINIA:

Commonwealth v. Jones & Robins, Inc. (1947), 186 Va. 30, 31 S.W. 720. Contracts of sale; options, leases.
WISCONSIN:

State ex rel. Reynolds v. Dinger (1961), 14 Wis.2d 193, 109 N.W.2d 685. Deeds; land contracts; leases; options; mortgages; assignments of mortgages and land contracts; releases of mortgages, chattel mortgages; bills of sale; conditional sales contracts, and other instruments of a similar nature.
In Hulse v. Criger (1952), 363 Mo. 26, 45-46, 247 S.W.2d 855, 862, the court outlined in very succinct terms the limits placed upon such real estate brokers and agents, and what they may and may not do, which statement, we feel, in the main is a wise guide to our course of conduct. In that case the court stated:
First: A real estate broker, in transactions in which he is acting as a broker, may use a standardized contract in a form prepared or approved by counsel and may complete it by filling the blank spaces to show the parties and the transaction which he has procured.
Second: A real estate broker, in transactions in which he is acting as a broker, may use standardized forms of warranty deeds, quit claim deeds, trust deeds, notes, chattel mortgages and short term leases, prepared or approved by counsel and may complete them by filling in the blank spaces to show the parties, descriptions and terms necessary to close the transaction he has procured.
Third: A real estate broker may not make a separate charge for completing any standardized forms, and he may not prepare such forms for persons in transactions, in which he is not acting as a broker, unless he is himself one of the parties to the contract or instrument.
Fourth: The required approval by counsel of standardized forms to be used in real estate transactions *225 properly may be made either by lawyers selected by real estate brokers individually or selected by real estate boards of which they are members.
Fifth: Even in transactions in which he is acting as a broker, a real estate broker may not give advice or opinions as to the legal rights of the parties, as to the legal effect of instruments to accomplish specific purposes or as to the validity of title to real estate; and he may not prepare reservations or provisions to create estates for life or in remainder or any limited or conditional estates or any other form of conveyance than a direct present conveyance between the parties, as provided for in standardized approved forms, to be effective upon delivery.
Sixth: A real estate broker in conferring with parties to obtain facts and information about their personal and property status, other than is necessary to fill in the blank spaces in standardized forms necessary to complete and close transactions in which he is acting as a broker, for the purpose of advising them of their rights and the action to be taken concerning them, is engaging in the practice of law.
It is our judgment that the opinion of the Supreme Court of Missouri, in that case, is a proper guide to follow, and that the conclusions therein stated will reach the fairest and the most just result, except with respect to the execution of deeds. The execution of a deed usually follows the finalizing of the agreement of the parties and is at their convenience. Ordinarily, it is preceded by the examination of an abstract of title by an attorney. Often it involves the life savings and/or years of future income of the parties. Therefore, there seems to be no reason, in time or convenience, why this important legal instrument should not be executed by persons of the highest possible skill in the practice of law. Therefore, we make this exception to the *226 Missouri rule, the execution of deeds is restricted to attorneys.
For the reasons hereinbefore stated, it is our opinion that the real estate brokers and agents should, within the limitations heretofore specified, be, and hereby are, permitted to fill in the forms of the following legal instruments prepared by attorneys, the use of which is here placed in issue: Listing Agreement; Earnest Money Contract; Proposition; Offer to Purchase; Option; Option [with listing clause]; Affidavit [real estate vendor]; Purchase Agreement; Exchange Agreement; Bill of Sale; Lease [short form], Contracts of Sale.
Furthermore, it is our opinion that the execution of legal instruments, other than those listed above, by persons other than the parties to the transaction,[2] should be limited to members of the legal profession.
For the reasons hereinabove stated, the injunction is granted, insofar as "standard legal forms," now used by respondent realtors, and made exhibits in the pleadings, are not within the list of those hereinabove enumerated, and the injunction is denied as to the use of the above enumerated forms by respondents.
Myers, C.J., and Landis, J., concur; Arterburn, J., concurs, with opinion; Jackson, J., concurs in part and dissents in part, with opinion.

CONCURRING OPINION
ARTERBURN, J.
I concur in the majority opinion because I believe it correctly states the law; yet I make *227 the following comment because as a lawyer I am vitally interested in the welfare of my profession. I feel that the bringing of an action of this type was ill-considered from a public relations viewpoint. The image of the lawyer in the public eye is not enhanced by this proceeding. Most lawyers care little for the kind of legal work that is the subject of this litigation. The charges are relatively small and the time distracting from more important work in most law offices. It would have been better to have left "well enough alone." For example, the medical profession is too sensible to launch a crusade against or proceed against everyone encroaching upon its precincts.
Of course, one may conjure up dire consequences flowing from untrained persons engaging either in law or in medicine, but such speculation should not outweigh the practicalities of everyday life. It is by a conceptualistic, rather than a realistic, approach to the problem of just what constitutes the practice of law that it can be said that the realtors are engaged in the unauthorized practice of law. The public reaction to such a course as this is well demonstrated by what happened in the State of Arizona where a very stringent Supreme Court decision, almost totally restricting real estate agents in their activities, was cancelled out immediately by a constitutional amendment.
The American Bar Association has intervened in this case. It is interesting to note, however, that nothing of any considerable importance is being done by that association in the federal area, where persons who are not members of the bar are permitted to practice before the gigantic federal bureaus, such as the Interstate Commerce Commission, Federal Power Commission, Patent Bureau, Federal Trade Commission, Treasury *228 Department, to mention but a few.[1] At the same time these administrative agencies assume the power to deny a member of the bar the right to represent a client before them without their permission.
There seems to be some delicacy and hesitancy in any effort to resist such unwarranted arrogance where it assumes a magnitude of some importance in the federal bureaucracy. On the other hand, attention, as here, is directed to petty practices in the state area. If the image of the attorney in the public eye is to be improved, we could very well spend more time cleaning up our own house rather than to discipline other organizations.

CONCURRING AND DISSENTING OPINION
JACKSON, J.
I concur in a part of the majority opinion and dissent in part.
The court is indebted to the parties hereto for the thorough, careful and painstaking presentation of the issues involved.
The authorities cited by the parties and in the majority opinion have been grouped, studied, evaluated and even dissected by the parties and the court. For that reason I am not citing any of the authorities relied on, as by so doing, I would only duplicate what has been done and would unduly extend this opinion. In departing from accepted practice I am considering what I deem to be the practical and just approach *229 to the problems confronting not only the court, and parties, but also the public generally, who are actually the real parties in interest in this action.
Relators and respondents each proclaim their selfless interest in this action and their concern for the public. Relators stress the fact that by reason of their academic and professional training they possess great skill, peculiar knowledge and professional competence in conveyancing and its related arts, particularly with regard to the legal effect of the instruments necessarily executed in the consumation of a real estate transaction, and with that contention, in general, I agree. The respondents argue with cogent reasoning that in some areas their knowledge of real estate transactions exceeds that of many lawyers; that they devote their full time to that business; and that they possess and exercise the necessary skills and ability to effectively and properly consumate nearly all phases of a real estate transaction; and again in general, I am in agreement. Each of the parties maintain with considerable ardor, that by reason of their skills, training, experience, the licensing requirements of the statutes and the rules of this court, they have been examined, licensed and approved, and that by virtue thereof, each is free of taint, incompetence and self interest. On that point I take issue with both parties. At the risk of offending friends and associates on both sides of this controversy, I submit that the licensing requirements of both came about through the efforts and demands of the public and the responsible members of both professions. This was an attempt to eradicate abuses that were only too apparent, were offensive to reputable practitioners in both professions, and were causing a loss of confidence in the ability and integrity of both groups.
*230 No reasonable person of the slightest experience would deny, nor I am sure, do the parties hereto, that there is a vast area where the functions of the professions can and do overlap. In my opinion, that area varies in nearly every transaction, and can be determined only by the circumstances then attendant, and is therefore incapable of being legally and precisely defined by any court in a class action such as this. In the final analysis this matter should be resolved by the parties themselves with judgment, good will and a clear and constant regard for the protection of the client. As a lawyer, I find it difficult to agree with the respondents premise that a man can in every, or even many, instances completely, competently and honestly serve two masters; on the other hand, to insist that a realtor have accompanying him at all times and at every state of the proceedings leading up to the consumation of a real estate transaction, one or more lawyers, is of course, an absurd impossibility and such a condition precedent, I am certain, was never contemplated by the relator. I am sure, and I feel that the responsible relator will agree, that there comes a time in most real estate transactions when the proposed buyer or seller should each consult with his own attorney in order to be fully advised as to the legal effect of the instrument or instruments to be executed, to ascertain that the legal description of the real estate is sufficient and correct, and to determine the validity, merchantability and extent of the title conveyed or acquired, etc. In that area the services of the attorney are as vital as the services of the relator in finding the buyer or seller.
I cannot agree completely, nor do I disagree entirely with the statement that respondents "should, within the limitations heretofore specified, be, and hereby are, *231 permitted to fill in the forms...." Certainly, many forms are available to the public generally that can properly and adequately be "filled in" or used by any person of reasonable intelligence, not only relators or lawyers. The value of these forms "standard" or otherwise depends entirely on the content of the fill-in, and the experience, knowledge and ability of the person who completes them.
I concur in the result of the majority opinion in the partial denial of the injunction sought, but for different reasons. This action was brought by the relators against the respondents as a class.
Generally the respondents admit the use of the certain forms referred to in the petition, admit to filling in the blank spaces and deny that such practice constitutes unauthorized practice of law.
As I have previously pointed out in this opinion, the facts and circumstances attendant upon each transaction would be the determinative factor in deciding whether or not the act or acts performed constitute the unauthorized practice of law. No specific act of unauthorized practice of law having been brought to the attention of this court, we should not presume that the respondents did or will engage in illegal or unauthorized acts. Should such act or acts occur not only do the relators have an adequate remedy, but the person injured thereby is not without means of redress.
In conclusion, I might add, perhaps gratuitously, that I am quite sure that most lawyers have no desire to become relators, and I am equally sure most relators have no desire to become lawyers, each is primarily concerned with the problem of honestly earning, from his own profession, an income sufficient to educate his children, properly care for his family and provide *232 a comfortable living. Success in that endeavor is more apt to be attained by a spirit of cooperation rather than one of enmity and certainly such cooperation will result in better service and greater benefit and protection to the public.
I concur with the majority opinion in so far as it partially denies the injunction prayed, but for reasons different from those stated therein.
NOTE.  Reported in 191 N.E.2d 711.
NOTES
[1] State ex rel. Ind. State Bar Assn. v. Osborne (1961), 241 Ind. 375, 172 N.E.2d 434; State ex rel. Gary Bar Assn., etc. v. Dudak, etc. (1955), 234 Ind. 413, 127 N.E.2d 522.
[2] The decision in this case does not limit or restrict the rights of parties, in transactions involving any or all of the legal instruments herein considered, to execute such instruments on their own behalf, as every man is entitled to act as his own attorney, whether it be within or outside a court of law, and to assume the consequences of his acts so performed.
[1] One of the rules for admission to practice before the Interstate Commerce Commission reads as follows:

"(b) Persons not attorneys. Any person not an attorney at law who is a citizen or resident of the United States, and who shall satisfy the Commission that he is possessed of the necessary legal and technical qualifications to enable him to render valuable service before the Commission, and that he is otherwise competent to advise and assist in the presentation of matters before the Commission." (Our italics)