**David W. BRAY, Appellant,**

v.

**David N. and Mary Ann BROOKS,**
**Respondents.**

**No. WD 57797.**

Missouri Court of Appeals,
Western District.

Jan. 9, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 27, 2001.

Application to Transfer Denied
April 24, 2001.

John Francis Burns, St. Joseph, for Appellant.

Lisa K. Rehard, Mary Ann Brooks, Platte City, for Respondent.

HOLLIGER, Presiding Judge.

David Bray appeals from the trial court's judgment finding him liable for treble damages under RSMo. 484.020 [1] for the unauthorized practice of law. He also appeals the trial court's finding that he negligently prepared documents in connection with the sale of a business. Although we find that Bray engaged in the unauthorized practice of law as defined in § 484.010, we also find there was insufficient evidence to support an award of treble damages for that violation. We, therefore, reverse.

David and Mary Ann Brooks (Brookses) were the shareholders of KCI Rent–All, Inc. David Bray is a real estate broker licensed in Missouri and Kansas with his office located in Stewartsville, Mo. He is neither an attorney nor a CPA. On May 7, 1996, David and Mary Ann Brooks entered into a listing agreement with Bray enlisting his services for the brokering of a sale of the business assets of KCI Rent–All, Inc. The listing agreement provided that Bray would receive an eight percent commission. Bray located prospective buyers (Michael D. Myers and Rebecca J. Myers). After negotiations between the two parties, the Myerses purchased the business assets and a lease for the real estate was eventually negotiated between the Myerses and the Brookses. The Myerses made an initial offer of $165,000 for the business assets alone and eventually purchased the business, plus its inventory, for $177,000. The Brookses paid Bray $13,200, eight percent of the initial offer of $165,000. The terms of the sale included execution of a non-compete agreement by the Brookses for the included, but separately stated, consideration of $95,000. Payment of that sum was to be made in monthly, interest free installments, over ten years. No security interest was provided for that obligation.

Bray drafted the following documents as part of the transaction: offer, counteroffer (these apparently representing the "sales contract"), an addendum, a corporate resolution authorizing the sale of the corporate assets, a promissory note representing the deferred portion of the sales price except for the payment for the covenant not to compete, a security agreement to the promissory note, a real estate lease [2] and a covenant not to compete. At trial, Bray testified that he believed he could legally draft the documents so long as he explained to the Brookses that he was not an attorney and so long as he did not get paid for doing so. Each of the documents contained the statement: "This is a legally binding document. Read it carefully. If

1. All Statutory references are to RSMo.1994 unless otherwise indicated.

2. At the time the listing agreement was executed the Brookses themselves were lessees of the property used by the business. They subsequently acquired the fee title interest and as part of the sale of the business leased the property to the Myerses.

you do not understand it, consult an attorney."

Bray did not have the documents for this specific transaction reviewed by an attorney. However, Bray testified that he had, in the past, had similar documents reviewed. The Brooks testified that though he didn't expressly say so, Bray represented to them that an attorney had reviewed the documents he prepared. Bray testified that he only told them that an attorney had reviewed the *form* of the documents, not the documents in case-specific situations. The Brookses did have these specific documents reviewed by an accountant and Bray made some changes according to the accountant's input. Bray testified that he advised the Brookses to consult an attorney. The Brookses testified that Bray told them it was "entirely up to them" if they wanted to consult an attorney. In addition to drafting the documents, Bray advised the Brookses of the tax implications of structuring the covenant not to compete. Because of tax concerns, Bray advised the Brookses not to place an acceleration clause in the covenant not to compete. No such clause was included in the agreement.

At the closing of the transaction, the Brookses paid Bray a commission representing eight percent of the original $165,000 listing price. There was apparently a dispute about the Brooks' obligation to pay a commission on the additional $12,000 of the business sale price and a commission on the value of the real estate lease. Bray filed suit in the Platte County Circuit Court making two claims for breach of contract. He first claimed that the Brookses owed him $960 representing a commission of eight percent on

the $12,000 difference between the original listing price and the eventual sales price. He also requested an eight percent commission on the claimed $40,980 value of the real estate lease. He sought attorney fees as well.

The Brookses filed a counterclaim alleging that Bray had engaged in the unauthorized practice of law in violation of § 484.010 and seeking treble damages under § 484.020. The second count of the counterclaim alleged that Bray had negligently drafted some of the documents.

The trial court held that the Brookses owed Bray $960 for the remaining commission balance and $500 for his attorneys fees. The court did not award damages for the commission claim on the real estate lease. Bray does not appeal the trial court's judgment on his original claim. On the Brooks' counterclaims the trial court first held that Bray had engaged in the unauthorized practice of law. Their actual damages were determined to be $7600 [3] and pursuant to § 484.020 those damages were trebled to $22,800. On Count II of the counterclaim the trial court found that Bray was negligent in the preparation of the sales documents but that all payments were currently being made by the Myerses and "no direct damages have yet resulted." After netting out the respective awards, the trial court entered judgment in favor of the Brookses against Bray in the sum of $21,340. Bray appeals raising two points.

He first complains the trial court erred in awarding actual and trebled damages because Bray charged no separate fee for tax advice and preparation of the noncompete agreement. He contends that the damage penalty provided for in § 484.020 is only applicable where a separate charge

---

**3.** Presumably this represented the amount of the eight percent commission charged for the value of the non-compete agreement. The court did not explain in its judgment how the

actual damage amount was determined but the parties seem to agree that this was the basis.

is made for the unauthorized legal services. In his second point Bray contends that the trial court erred in finding him negligent in the preparation of documents because the Brookses failed to prove damages which Bray argues is a necessary element of their negligence claim.

### The Unauthorized Practice of Law

■ The judiciary has the inherent power to regulate the practice of law in Missouri. *Division of Employment Sec. v. Westerhold,* 950 S.W.2d 618, 620 (Mo.App. 1997). The legislature may aid the judiciary by developing additional penalties for the illegal practice of law. *Id.* The Missouri legislature did so by enacting § 484.020. Section 484.020 prohibits any individual from engaging in the practice of law or doing law business as defined in § 484.010 without a license. Any person who violates this provision is guilty of a misdemeanor and may be sued by the wronged party for treble the amount "which shall have been paid him or it for any service rendered in violation hereof . . . ." Section 484.020.2.

Section 484.010 defines law business as "the advising or counseling for a valuable consideration of any person . . . as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure . . . any property or property rights whatsoever." Bray argues he did not receive a fee for his services, and, therefore, did not engage in law business or the practice of law. He argues, therefore, that there are no actual damages to be treble under § 484 .020.

Bray contends that the commission he did receive was owed him the moment he found a ready and willing buyer-well before he ever prepared the documents and gave the advice in question. The listing agreement between Bray and the Brookses contained no provision concerning his drafting of any documents and did not breakdown his commission or require as part of his services that Bray draft documents or render advice. Bray testified that he only provided the "form documents" to "minimize" legal expense. He argues that since the trial court awarded him the full amount of the commission, by awarding him the remaining $960, plus attorney's fees, the court recognized that Bray did not receive money for an illegal act. He claims the trial court's decision, in essence, admitted that the money he received was only the commission for the sale of the business, not for illegal law business.

The Brookses argue that under sections 484.010.2 and 484.020.2 "valuable consideration" does not have to be identified as a separate charge. They claim that the separate charge requirement is judicially created and each case is limited to its specific facts. In *Hulse v. Criger,* 363 Mo. 26, 247 S.W.2d 855, 862 (1952), the Court found it permissible for a broker to prepare standardized forms for various real estate transactions. All of these permissible activities, however, in order to be protected, must be done while acting in a broker capacity. *Id.* The Court further held that a real estate broker may not give advice or opinions as to legal rights or legal effects of the instruments they are drafting. *Id.* Finally, the court said that a broker can not draft even the permissible documents and also receive separate compensation for doing so. *Id.* at 861. The Real Estate Commission has incorporated the holding in *Hulse* in advising brokers on the completion of standardized forms. 4 CSR 250–8.140. The Code of State Regulations

states: (2) "A real estate broker shall not make a separate charge for completing any standardized forms...." *Id.*

The Supreme Court of Missouri limited the facts of *Hulse* to apply only to a person regularly engaged as a real estate broker. *In re Thompson*, 574 S.W.2d 365, 367 (Mo. banc 1978). The Brookses claim that Bray was not acting as a real estate broker, therefore, the exception in *Hulse* does not apply. The Brookses argue that Bray was not acting in a real estate broker capacity under § 339.010 and therefore he was participating in the unauthorized practice of law.[4] They claim that since Bray was not acting as a broker that all consideration received by him for the sale was in violation of § 339.010 and, therefore, illegal law business. The Brookses cite no authority for this and only support their argument by claiming that since the dealings between Bray and themselves did not start out as a lease for real estate, but rather a purchase of business assets, that Bray's activities do not fit within the statutory definition of a real estate broker.

The trial court found that Bray was not acting in the capacity of a real

estate broker. The Brookses seem to assume that if Bray was not acting as a real estate broker, then he must have been engaged in the practice of law. This argument is flawed. They cite no authority that would prohibit a non-lawyer, whether a licensed real estate broker or not, from engaging in the marketing and general promotion of the sale of the latter's business. Many activities of such an agent simply would not fall within the definition of the practice of law. The three prohibitions of § 484.010 restrict: (1) *"advising or counseling ... as to any secular law"*; (2) *"... drawing or the procuring of or assisting in the drawing ... of any paper, document, or instrument affecting or relating to secular rights ..."*; and (3) *"... doing of any act ... in a representative capacity, obtaining or tending to obtain or securing or tending to secure ... any property or property rights whatsoever."* The Brookses counterclaim only asserts a violation of § 484.010 and 484.020 by means of subsection (1) and (2). They did not plead or claim that any act of business broker violated subsection (3) and we do

---

4. Section 339.010.1 defines a real estate broker as:

any person, partnership, association or corporation, foreign or domestic who, for another, and for a compensation or valuable consideration, as a whole or partial vocation, does, or attempts to do, any or all of the following:
(1) Sells, exchanges, purchases, rents, or leases real estate;
(2) Offers to sell, exchange, purchase, rent or lease real estate;
(3) Negotiates or offers or agrees to negotiate the sale, exchange, purchase, rental or leasing of real estate;
(4) Lists or offers or agrees to list real estate for sale, lease, rental or exchange;
(5) Buys, sells, offers to buy or sell or otherwise deals in options on real estate or improvements thereon;
(6) Advertises or holds himself out as a licensed real estate broker while engaged in

the business of buying, selling, exchanging, renting, or leasing real estate;
(7) Assists or directs in the procuring of prospects, calculated to result in the sale, exchange, leasing or rental of real estate;
(8) Assists or directs in the negotiation of any transaction calculated or intended to result in the sale, exchange, leasing or rental of real estate;
(9) Engages in the business of charging to an unlicensed person an advance fee in connection with any contract whereby he undertakes to promote the sale of that person's real estate through its listing in a publication issued for such purpose intended to be circulated to the general public;
(10) Performs any of the foregoing acts as an employee of, or on behalf of, the owner of real estate, or interest therein, or improvements affixed thereon, for compensation.

not consider that issue. Simply acting as a business broker does not clearly fall within the prohibitions of subsections (1) and (2).

■ Nevertheless, Bray does not argue that he did not engage in activities described in subsections (1) and (2), but rather that he did not do so for valuable consideration as also included in the statutory definition in § 484.010.2. Bray's position too narrowly restricts the definition. The Supreme Court held in *State ex inf. Miller v. St. Louis Trust Co.*, 335 Mo. 845, 74 S.W.2d 348, 354–55 (1934) that the term "valuable consideration" in § 11693, RSMo.1929 [5] was not limited to monetary consideration or even consideration definitely measurable in money. There the bank provided and drafted various testamentary documents. The "consideration" was held to be the naming of the bank as trustee or executor. *Id.* at 355–36, 74 S.W.2d 348. We reject any claim by Bray that he was not engaged in the unauthorized practice of law as defined in § 484.010 simply because no separate charge was made for document preparation or legal advice. Herein, the retention of Bray as a compensated broker was sufficient consideration to satisfy the definitional requirements of § 484.010. We likewise reject the suggestion that because he claims the Brookses could have taken the documents to a lawyer, that the documents suggested consultation with a lawyer or even that he urged them to have them reviewed by a lawyer (a claim denied by the Brookses), that his activities in drafting the documents were permissible. The activities prohibited by § 484.010 are not subject to waiver, consent or lack of objection by the victim.

■ We must determine whether Bray's activities were done for valuable consideration. Bray argues that these statutes are penal and must be strictly construed. *Collier v. Roth*, 468 S.W.2d 57, 60 (Mo.App. 1971). Although that general statement is correct we must recognize that this statute is intended to protect the public from the rendition of services deemed to require special fitness and training by those not possessing the required legal qualifications. *State ex inf. Miller*, 74 S.W.2d at 357. The court said the statute as a whole should be interpreted so as to effectuate the legislative intent, stating:

> If the words "valuable consideration" should be given the narrow meaning . . . then any act designated in the statute as constituting "law business" might be performed with impunity by any person, though wholly unqualified or unfit to render the service, for the valuable consideration of advancing a business whatever its nature might be. Such an interpretation would thwart the plain intent and purpose of this part of the statute. . . .

*Id.*

■ In today's sophisticated marketing era only the imagination limits the possibilities of offering prohibited legal services without charge but in conjunction with or as a free benefit to some other product or service. We need not decide whether every possible tie in arrangement where a "legal service" was tied to the sale of another product or service would satisfy the valuable consideration requirement of § 484.010. There was ample evidence in the record to support, and the trial court implicitly found, that the document drafting done by Bray here was part of his package of services offered to customers such as the Brookses. There was, therefore, valuable consideration and Bray did engage in the unauthorized practice of law

**5.** Now § 484.010

as defined in § 484.010.[6] The documents used by Bray were far from being simple fill in the blank standardized forms; they called for complex and sophisticated consideration of various legal issues. That need is demonstrated by the simple fact that the promissory note drafted by Bray was payable to the Brookses individually even though it was the corporate entity selling the assets.

## Does the Civil Penalty Provision Apply to Bray's Unauthorized Practice of Law?

Holding that Bray participated in the unauthorized practice of law, however, is not sufficient to hold him responsible under § 484.020 for trebled damages. That *civil* liability for treble damages under § 484.020.2 may require a monetary charge for the legal services was first recognized in *State ex inf. Miller. Id.* at 355. There the court noted that prosecution for the criminal misdemeanor penalty under then § 11694, RSMo.1929 (now § 484.020.2) does not require proof of a monetary consideration. "Requirement of this character of consideration would arise only, if at all, upon an attempted enforcement of the supplemental statutory liability for a money judgment." *Id.* The Brookses argue that they should not be required to prove a separate charge and to do would so restrict the civil damage remedy and seriously weaken the statute. Bray argues that under his agreement with the Brookses he was entitled to an eight percent commission regardless of whether he drafted any documents. Bray argues that there was no evidence of a separate charge for his drafting of documents in violation of § 484.010.1. Acceptance of the Brooks' argument could result in the application of severe penalties against a person based on the amounts that were legitimately charged for legitimate goods and services. However, acceptance of Bray's argument would allow a person engaging in the unauthorized practice of law to avoid civil liability for damages under § 484.020.2 merely by not making a defined separate charge. Neither position would satisfy or fulfill the proper legislative intent underlying the statute. A more reasoned approach would be to impose civil damage liability under § 484.020.2 where not only is there a separate charge for the service, but also when there is a different charge for the goods or services that are illegal in nature based on whether legal documents or advice are to be provided. The Supreme Court implicitly recognized this middle ground in fashioning the injunctive relief in *In re First Escrow, Inc.*, 840 S.W.2d 839, 849 (Mo. 1992), to hold that the escrow company may not charge a separate document preparation fee "or vary their customary charges for closing based upon whether documents are to be prepared in the transaction." Here the Brookses presented no evidence of what customary charges might be for the legitimate services Bray provided or any other measure by which the trial court could determine the amount "paid" for the legal services. As a consequence, that portion of the judgment erroneously declared and applied the law and there was no substantial evidence to support the damage calculation. Additional remedies exist to regulate the unauthorized practice of law. Contempt proceedings can be brought, injunctions can be sought, courts

---

6. We do not consider whether any other possible exceptions apply herein. As noted before, Bray was not acting as a real estate broker. The documents he used were not the simple, standardized forms, approved by counsel, which are permitted real estate agents under *Hulse v. Criger*, 363 Mo. 26, 247 S.W.2d 855, 861–62 (1952) or escrow companies under *In re First Escrow, Inc.*, 840 S.W.2d 839, 848–49 (Mo. banc 1992).

can refuse to enforce contracts involving the unauthorized practice of law and criminal prosecutions could be brought. *State v. Carroll,* 817 S.W.2d 289, 291 (Mo.App. 1991).

## NEGLIGENCE

■ Next Bray appeals the trial court's finding of negligence in light of a finding of no damages or, more properly, no damages as of yet. Bray argues that damages are one of the four elements necessary to support a negligence claim and that, absent a showing of damages, he cannot be found negligent. In order to prove negligence one must prove that the defendant had a duty, breached that duty, that the breach was a proximate cause of the plaintiff's damages and that the plaintiff actually incurred damages as a result. *Coleman v. City of Kansas City, Mo.,* 859 S.W.2d 141, 147 (Mo.App.1993). In order to prevail under a negligence claim, the claimant must prove every one of the four elements. *Courtney v. Emmons,* 702 S.W.2d 139, 141 (Mo.App.1985).

The Brookses argue that Bray lacks standing to appeal the finding of negligence contending that he is not an aggrieved party since there was no damage assessment rendered against him. Based upon § 512.020 they argue that his appeal should be dismissed. Section 512 .202 grants a right to appeal to "any party to a suit *aggrieved* by any judgment of any trial court in any civil cause from which an appeal is not prohibited . . . ."

■ We find a more fundamental problem with the Brooks' negligence claim. A review of their counterclaim indicates a failure to plead the occurrence of any dam-

age; in fact the pleading specifically alleges that there is only the possibility of future damage if the Myerses discontinue the deferred payments. [7] The fact of damage is an essential element of a negligence claim. This portion of the counterclaim fails to state a claim upon which relief can be granted. Because, in this case, damages have not yet accrued, and may never accrue in the future, the cause of action for negligence was filed prematurely. *Cain v. Hershewe,* 760 S.W.2d 146, 149 (Mo.App. 1988). If a plaintiff cannot at the time of trial prove any damages resulting from defendant's negligence then the claim is premature and should be dismissed by the trial court. *Id.*

■ The defense of failure to state a claim can be raised at any time including upon appeal. Rule 55.27(g)(2). It has been held in a number of cases that the failure to state a claim is a jurisdictional defect and may even be raised sua sponte by the appellate court. *Zahorsky v. Barr, Glynn & Morris, P.C.,* 693 S.W.2d 839, 841 (Mo.App.1985).[8] There the court held sua sponte that the plaintiff under no set of facts could plead and recover in a malicious prosecution action against the defendants. The court therefore affirmed the grant of summary judgment even though it had been entered on different and possibly erroneous grounds. This is not a case such as *Zahorsky* where the claim could never be successful as a matter of law, or one where there has merely been a failure to allege or prove damage that have occurred. But in this case both parties agree that the Myerses are making all payments and even if the documents were not properly prepared that breach of duty

---

7. There is no argument that the pleading defect was cured by the evidence. In fact the evidence was entirely consistent with the pleadings and the trial court's eventual findings; that no damage had yet accrued.

8. A holding in *Zahorsky* on an unrelated point was overruled by *Ritterbusch v. Holt,* 789 S.W.2d 491, 494 (Mo. banc 1990).

has not resulted in any present damage and may not even in the future. In this situation we believe the proper remedy is to dismiss Count II without prejudice. That was the course followed in *Eddleman v. Dowd*, 648 S.W.2d 632, 633–34 (Mo.App. 1983) where a legal malpractice case was dismissed because the underlying personal injury case was still pending and plaintiff could not therefore prove any damage.

The judgment of the court is reversed with directions to the trial court to enter judgment in favor of Bray in the sum of $1460, judgment against the Brooks on Count I of their counterclaim and to dismiss without prejudice Count II of the counterclaim.

BRECKENRIDGE, J., and SMART, concur.