In re William R. THOMPSON et al., Respondents.

No. 60074.

Supreme Court of Missouri, En Banc.

Dec. 18, 1978.

O. J. Taylor, Springfield, for informants.

Paul E. Ground, Manchester, for respondents.

BARDGETT, Judge.

This is an action brought by the Advisory Committee of The Missouri Bar Administration against certain individuals and corporations seeking injunctive relief against the sale in this state of "Divorce Kits" by the respondents. This is an original proceeding in this court pursuant to rules 5.05, 5.13, and 5.18, jurisdiction being premised on this court's inherent power to regulate the practice of law in Missouri. *Clark v. Austin*, 340 Mo. 467, 101 S.W.2d 977 (banc 1937).

For the following reasons we dismiss the information and hold that these named respondents are not engaged in the unauthorized practice of law in this state.

The facts in this case are by stipulation of the parties and by admissions in the pleadings. Each of the respondents is presently engaged in or has previously engaged in the sale of divorce kits in Missouri. Respondent Thompson, an Oregon resident, is the principal owner of respondent, Divorce Service, Inc., an Oregon corporation. Divorce Service, Inc., prepares the "Divorce Kits" and makes them available to franchisees. The other named respondents are the franchise holders and have sold the kits in the St. Louis and Kansas City areas. None of the named respondents are attorneys or authorized to practice law in Missouri.

The "Divorce Kits" offered for sale in this state consist of a packet approximately one-fourth inch in thickness. Much of the kit consists of various forms pertaining to an action for an uncontested dissolution of marriage. Blank spaces, with instructions on practice forms, are provided for the insertion of specific items applicable to the parties involved in the dissolution. These forms include two forms for a petition for dissolution of marriage, one a "joint" petition, and one an individual petition, as well as other forms including affidavits of non-military service, waivers of notice of hearing, affidavits needed to obtain service by publication, financial statements, and a decree form. These forms are accompanied by two kinds of instructions, a set of general procedural instructions designed to instruct as to what forms to file, in what order and where, and instructions on how to prepare the forms. Initially, the kits included a cassette tape recording restating the instructions in the packet; however, the kits no longer include the cassette tapes.

Respondents make two contentions in this action. First, that the activities in which they engage do not constitute the unauthorized practice of law; second, that any action by this court in forbidding or enjoining respondents would contravene the first and fourteenth amendments to the United States Constitution relating to freedom of speech and freedom of the press and art. 1, sec. 8, of the Missouri Constitution relating to the same subjects.

■ We first consider jurisdiction over the issues in this case. The judicial branch of government has the power to regulate the practice of law. *In re Richards*, 333 Mo. 907, 63 S.W.2d 672 (banc 1933). The legislature has prescribed penalties for the unauthorized practice of law and has defined the terms "practice of law" and "law business" as follows:

"484.010. 'Practice of the law' and 'law business' defined.

—1. The 'practice of the law' is hereby defined to be and is the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any act in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee or commission constituted by law or having authority to settle controversies.

2. The 'law business' is hereby defined to be and is the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for a valuable consideration of any paper, document or instrument affecting or relating to secular rights or the doing of any act

for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any property or property rights whatsoever."

Although the legislature may assist the court by providing penalties for the unauthorized practice of law and thus may define that term, the legislature may in no way hinder, interfere, or frustrate the court's inherent power to regulate the practice of law. *Hoffmeister v. Tod*, 349 S.W.2d 5, 11[2] (Mo. banc 1961).

In *Hulse v. Criger*, 363 Mo. 26, 247 S.W.2d 855, 857–858 (banc 1952), we stated that the regulation by this court of the unauthorized practice of law ". . . is not to protect the Bar from competition but to protect the public from being advised or represented in legal matters by incompetent or unreliable persons. Our purpose must be to make sure 'that legal services required by the public, and essential to the administration of justice, will be rendered by those who have been found by investigation to be properly prepared to do so by conforming to strict educational standards, and who demonstrate that they have the character to conform to higher standards of ethical conduct than are ordinarily considered necessary in business relations which do not involve the same fiduciary and confidential relationships.' "

The instant case appears to be one of first impression before this court. However, we have considered analogous issues in the past. In *Hulse v. Criger, supra,* we held that one regularly engaged as a real estate broker could fill in simple legal forms such as contracts of sale, notes, deeds of trust, and other standard forms. We limited this activity to the preparation of forms essential to a principal vocation and specifically held that one "may not give advice or opinions as to the legal rights of the parties as to the legal effect of [the] instruments

. . . ." 247 S.W.2d at 862[10]. We find *Hulse v. Criger, supra,* generally applicable. Other jurisdictions have decided cases directly on point and are more persuasive however in light of recent United States Supreme Court cases decided after *Hulse.*[1]

In *State Bar v. Cramer*, 399 Mich. 116, 249 N.W.2d 1 (1976) defendant Cramer was engaged in the business of soliciting and aiding in divorces under Michigan's "no-fault" divorce law. Defendant prepared the complaint and summons for clients following an initial conference. Thereafter, all forms were completed and executed at defendant's office. Before the evidentiary hearing for the entry of judgment, the defendant provided "clients" with suggested testimony to be offered to the court as well as a list of questions to be propounded to the witnesses. The Michigan Supreme Court upheld a finding of civil contempt by the defendant. However, the court distinguished between personal contact and "customers" in the nature of consultation, explanation, recommendation or advice, as well as suggesting or advising how the forms should be personally tailored and the mere advertisement and sale of do-it-yourself forms. The Michigan court held at 249 N.W.2d at 9[14]:

"We also believe this to be a significant distinction. The advertisement and distribution to the general public of forms and documents utilized to obtain a divorce together with any related textual instructions does not constitute the practice of law. There can be no serious challenge raised to this or any enterprise which is otherwise in compliance with those regulations applicable to products placed in the stream of commerce. Were defendant to limit her activity to providing forms and instructions regarding divorce, her undertaking would be analogous to that set forth in *New York County Lawyers Assn. v. Dacey*, 21 N.Y.2d

---

1. We note the cases of *Bates v. State Bar of Arizona*, 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977), dealing with advertising of attorneys; *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 95 S.Ct. 2004, 44 L.Ed.2d 572 (1975) dealing with fee schedules; *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), dealing with the right of pro se representation.

694, 287 N.Y.S.2d 422, 234 N.E.2d 459 (1967)."

In *Oregon State Bar v. Gilchrist,* 272 Or. 552, 538 P.2d 913 (1975), relied upon in *State Bar v. Cramer, supra,* the Oregon Supreme Court held that an injunction forbidding the sale and advertisement of divorce forms unduly restricted the activities of the defendants. The court distinguished between actual consultation with clients as opposed to the mere sale and advertisement of forms, stating at 538 P.2d 919:

> "We conclude that in the advertising and selling of their divorce kits the defendants are not engaged in the practice of law and may not be enjoined from engaging in that part of their business. We further conclude, however, that all personal contact between defendants and their customers in the nature of consultation, explanation, recommendation or advice or other assistance in selecting particular forms, in filling out any part of the forms, or suggesting or advising how the forms should be used in solving the particular customer's marital problems does constitute the practice of law and must be and is strictly enjoined."

See also *Colorado Bar Association v. Miles,* 557 P.2d 1202 (Colo. banc 1976).

In *Florida Bar v. Brumbaugh,* 355 So.2d 1186 (Fla.1978), defendant advertised to the public that she performed typing services for "Do-It-Yourself" divorces, bankruptcies and wills. The Florida Supreme Court, because of several U. S. Supreme Court cases concerning first-amendment rights and the practice of law, reexamined their earlier decisions of *Florida Bar v. American Legal and Business Forms, Inc.,* 274 So.2d 225 (Fla.1973), and *Florida Bar v. Stupica,* 300 So.2d 683 (Fla.1974). Those prior decisions held that it was not the unauthorized practice of law to sell to the public printed legal forms but held that no instructions could be provided purporting to instruct on how to fill out the forms or how to use them. The Florida court in *Brumbaugh,* citing *State Bar v. Cramer, supra,* held at 355 So.2d 1193–1194[15–16]:

"Although there is a danger that some published material might give false or misleading information, that is not a sufficient reason to justify its total ban. We must assume that our citizens will generally use such publications for what they are worth in the preparation of their cases, and further assume that most persons will not rely on these materials in the same way they would rely on the advice of an attorney or other persons holding themselves out as having expertise in the area. The tendency of persons seeking legal assistance to place their trust in the individual purporting to have expertise in the area necessitates this Court's regulation of such attorney-client relationships, so as to require that persons giving such advice have at least a minimal amount of legal training and experience.

. . . We hold that Ms. Brumbaugh, and others in similar situations, may sell printed material purporting to explain legal practice and procedure to the public in general and she may sell sample legal forms. To this extent we limit our prior holdings in *Stupica* and *American Legal and Business Forms, Inc.* . . . In addition, Ms. Brumbaugh may advertise her business activities of providing secretarial and notary services and selling legal forms and general printed information. However, Marilyn Brumbaugh must not, in conjunction with her business, engage in advising clients as to the various remedies available to them, or otherwise assist them in preparing those forms necessary for a dissolution proceeding."

In *State v. Winder,* 42 A.D.2d 1039, 348 N.Y.S.2d 270 (1973), the court held that there was no legal impediment to a layman's sale of a "Divorce Yourself Kit" because the kit did not give personal advice to specific problems to a readily identifiable person. However, the court held that the injunction issued below should stand to the extent that the defendant had offered personal advice to individuals.

In *New York County Lawyers Association v. Dacey*, 21 N.Y.2d 694, 287 N.Y.S.2d 422, 234 N.E.2d 459 (1967), the New York Court of Appeals held the publication and sale of legal forms was a common activity and the sale of a book entitled "How to Avoid Probate", which included forms for use by lay people, did not constitute the unauthorized practice of law.

However, *Palmer v. Unauthorized Practice Committee of the State Bar of Texas*, 438 S.W.2d 374, 376 (Tex.Civ.App.1969), held the sale of will forms did constitute the unauthorized practice of law and stated:

".  .  . A will 'form' as distributed by defendants is almost a will itself. The 'form purports to make specific testamentary bequests in the planning of estates of potential decedents. By reading defendants' advertisements, by reading the will form, and by reading the definitions that are attached, the unsuspecting layman is led to believe that defendants' will 'form' is in fact only a form and that all testamentary dispositions may be thus standardized. The assumption is misleading and certainly will lead to unfortunate consequences for any layman who might rely upon the 'form' and the definitions attached." [2]

 The court holds that the advertisement and sale by the respondents of the divorce kits does not constitute the unauthorized practice of law so long as the respondents and other similarly situated refrain from giving personal advice as to legal remedies or the consequences flowing therefrom.[3]

Of course, respondents by entering their product in the stream of commerce may be liable to the consumers if they are negligently damaged by the use of the product. The cliche that "A person who represents himself has a fool for a client" is still accurate. Important rights are determined in dissolution proceedings—even "uncontested" cases—and the intelligent citizen will consult an attorney in such matters. The court by this opinion does not directly or indirectly approve or sanction the contents of the kits here involved. We merely hold that the sale of these kits does not constitute the unauthorized practice of law.

The information is dismissed.

MORGAN, C. J., FINCH, DONNELLY, RENDLEN and SEILER, JJ., and GUNN, Special Judge, concur.

SIMEONE, J., not participating because not a member of the court when cause was submitted.

---

**2.** We note that Texas is a community-property state which may lead to unique problems in the probate of "form" testamentary instruments.

**3.** Informant contends that the distribution of a cassette tape purporting to instruct on the completion of the forms constitutes the unauthorized practice of law. We decline to pass on this contention as respondents have voluntarily ceased any distribution of the tapes.