**LUCAS SUBWAY MIDMO, INC., on behalf of Itself and on behalf of all others similarly situated, Appellant,**

v.

**The MANDATORY POSTER AGENCY, INC. d/b/a Corporate Records Service, Respondent.**

**WD 79834**

Missouri Court of Appeals, Western District.

April 25, 2017

Application for Transfer to Supreme Court Denied May 25, 2017

Kari A. Schulte and Matthew A. Clement, Jefferson City, MO, for appellant.

Glenn Davis and Charles N. Insler, St. Louis, MO, for respondent.

Before Division Four: Mark D. Pfeiffer, Chief Judge, Presiding, Lisa White Hardwick, Judge and Gary D. Witt, Judge

Gary D. Witt, Judge

Appellant Lucas Subway MidMo, Inc. ("Lucas Subway") sued The Mandatory Poster Agency, Inc. d/b/a Corporate Records Service ("MPA") for the unauthorized practice of law, money had and received, and violations of the Missouri Merchandising Practices Act, seeking class certification on all claims. The Cole County Circuit Court denied Lucas Subway's request for class certification and ultimately granted summary judgment to MPA on all counts. Lucas Subway now appeals both rulings. We reverse and remand.

## Factual and Procedural Background [1]

Lucas Subway owns and operates several Subway restaurants in Missouri, which are principally located in the Lake of the Ozarks area. MPA is a Michigan corporation, which operates Corporate Records Services that prepares annual minutes for corporations. MPA markets its product through direct mail solicitations containing an Annual Minutes Solicitations Form ("Form"). The Form is sent to a corporation's registered agents and offers to prepare annual corporate min-

utes if the corporation provides the names of its shareholders, officers and directors. When annual minutes are purchased, the information from the Form is manually entered into MPA's computer system which then populates a corporate minutes form with the corporation's unique information, including the specific company's name and address and the names of its shareholders, officers and directors. The company-specific annual minutes are then printed and mailed to the corporation with instructions to sign the minutes and place them in the corporate minute book. The cover letter sent with the minutes states that: "Your company will be in full compliance with the corporate minute records requirement after the Unanimous Consent documents are signed and dated." MPA does not employ any attorneys to draft or oversee the creation of these documents. Nor is MPA licensed to practice law in the State of Missouri.

Lucas Subway purchased corporate minutes from MPA for $125 in March of 2013. In April of 2013, the State of Missouri, through its Attorney General, filed an action against MPA for various remedies under the Missouri Merchandizing Practices Act ("MMPA"), Section 407.020 [2] ("MMPA Action"). The MMPA Action followed an inquiry by the Office of the Chief Disciplinary Counsel concerning whether MPA was engaging in the unauthorized practice of law in Missouri. Following correspondence from MPA, the Office of the Chief Disciplinary Counsel declined to take any action against MPA. The Attorney General, however, continued with the MMPA Action, alleging that MPA's solici-

---

**1.** This Court must view the evidence in a light most favorable to the verdict and give the State the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993); *Wilmes v. Consumer Oil Co. of Mary-* *ville*, 473 S.W.3d 705, 715 (Mo. App. W.D. 2015).

**2.** All statutory citations are to RSMo 2000 as currently updated, unless otherwise noted.

tation materials were deceptive and misleading. On August 12, 2013, MPA entered into an Assurance of Voluntary Compliance agreement ("AVC") with the State of Missouri. The AVC required that MPA alter its solicitations, pay $3,500 in costs and penalties, and send written notice to all of MPA's Missouri customers alerting customers that they have the right to a full refund of any payments made to MPA if they were "not satisfied" with the corporate minutes they received.

Lucas Subway did not seek a refund under the MMPA Action. Instead, on August 7, 2013, it filed suit against MPA in Cole County alleging that MPA (1) engaged in the unauthorized practice of law in violation of section 484.020, (2) unlawfully received money from Lucas Subway for legal services which it could not provide, and (3) committed various violations of the MMPA ("Petition"). The Petition also sought class certification on behalf of MPA's other Missouri customers from the time period beginning five years prior to the date the Petition was filed.

The circuit court denied Lucas Subway's request for class certification and also denied its request to appeal the order under Rule 84.035.[3] MPA filed a Motion for Summary Judgment on June 2, 2015 ("Motion"). On June 21, 2016, the circuit court granted MPA's Motion finding, *inter alia*, that MPA's actions did not constitute the unauthorized practice of law. Lucas Subway now appeals both the court's order denying class certification and its order granting summary judgment in favor of MPA.

---

**3.** All rule references are to Missouri Supreme Court Rules (2016).

**4.** Missouri courts have recognized certain exceptions to this general rule for entities or persons drafting legal documents incidental to other work and charging no separate fee for such work. *See Hargis v. JLB Corp.*, 357

## Discussion

### I.

 Lucas Subway's first point on appeal alleges that the circuit court erred in granting summary judgment in favor of MPA. Specifically, Lucas Subway alleges that the court erred in determining that MPA was not conducting the unauthorized practice of law or, in the alternative, that the court erred in finding that MPA had valid defenses to Lucas Subway's claims.

This Court reviews an entry of summary judgment *de novo. ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is only appropriate where the moving party has demonstrated that, based on the undisputed facts, they are entitled to judgment as a matter of law. *Id.*; Rule 74.04(c). When reviewing a trial court's grant of summary judgment, we review the record in the light most favorable to the party against whom summary judgment was entered. *ITT Commercial Fin. Corp.*, 854 S.W.2d at 376.

 Missouri seeks to "protect the public from being advised or represented in legal matters by incompetent or unreliable persons" by restricting the practice of law only to licensed attorneys. *Hulse v. Criger*, 363 Mo. 26,247 S.W.2d 855, 857–58 (Mo. 1952). No person or entity "shall engage in the practice of law or do law business" in Missouri unless having been duly licensed by the State. Section 484.020.1.[4] The legislature defines the "practice of law" as:

---

S.W.3d 574, 579 (Mo. banc 2011). It is undisputed that MPA's primary business was preparation of corporate minutes, for which it charged a fee, so we will not discuss these exceptions as they are irrelevant to the issue before us.

the appearance as an advocate in a representative capacity or the drawing of papers, pleadings or documents or the performance of any in such capacity in connection with proceedings pending or prospective before any court of record, commissioner, referee or any body, board, committee, or commission constituted by law or having authority to settle controversies.

Section 484.010.1. Section 484.010.2 goes on to define the "law business" as:

the advising or counseling for a valuable consideration of any person, firm, association, or corporation as to any secular law or the drawing or the procuring of or assisting in the drawing for valuable consideration of any paper, document or instrument affecting and relating to secular rights or the doing of any act for a valuable consideration in a representative capacity, obtaining or tending to obtain or securing or tending to secure for any person, firm, association or corporation any proper or property rights whatsoever.

These statutes "merely act in aid of" the Missouri Supreme Court's "regulation of the practice of law and cannot supersede or distract from the power of the judiciary to define and control the practice of law." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 578 (Mo. Banc 2011) (internal quotations omitted). The judiciary is the "sole arbiter of what constitutes the practice of law." *Id.*

■ In Missouri, "charging a separate fee for the completion of legal forms by non-lawyers constitutes the unauthorized practice of law business." *Carpenter v. Countrywide Home Loans, Inc.*, 250 S.W.3d 697, 702 (Mo. banc 2008). Thus, we begin our inquiry with whether the corporate minutes prepared by MPA constitute a legal document. "Determining whether a particular form is legal in nature requires the court 'to balance the protection of the public against a desire to avoid unnecessary inconvenience and expense.'" *McKeage v. TMBC, LLC*, 847 F.3d 992, 1000 (8th Cir. 2017) (quoting *Hargis*, 357 S.W.3d at 584). "A key factor in this inquiry is the legal judgment or discretion required to prepare the form." *Id.* "However, once it has been determined that a particular document is legal in nature, the act of charging a fee for the preparation or completion of that document constitutes unauthorized law business, *even when a non-lawyer does not exercise any legal judgment in completing the form.*" *Id.* (emphasis added).

■ There are many documents that have legal effect that do not prevent them from being drafted by a layman. *Hulse*, 247 S.W.2d at 862; *Hargis*, 357 S.W.3d at 584–85. While Missouri has held that drafting documents such as promissory notes and deeds of trusts constitutes the practice of law, courts have yet to address the question of corporate minute books. *See Zmuda v. Chesterfield Valley Power Sports, Inc.*, 267 S.W.3d 712, 715 (Mo. App. E.D. 2008) (noting that the Missouri Supreme Court, in *Eisel v. Midwest Bank-Centre*, 230 S.W.3d 335 (Mo. banc 2007), found promissory notes and deeds of trusts to be legal documents but did not limit the drafting of other documents from also meeting this definition).

MPA argues that the corporate minutes are merely form documents and more akin to a document with legal effect rather than a legal document as contemplated by section 484.010. MPA characterizes its services as merely taking a form filled out by customers and entering the data into a computer to have a form populated by the computer. It emphasizes that its employees do not exercise discretion or judgment as to what to include in the documents. There is no "advising or counseling" of clients as contemplated by section 484.010.

Lucas Subway responds that the statute does not require a party to advise or counsel clients in order to be guilty of the unauthorized practice of law; it is enough for a party to draft a legal document for a client. While MPA may be utilizing an internal form, it is providing to customers a fully completed document with the representation or advice that the document complies with the legal requirements of Chapter 351. The inclusion of this representation or advice runs afoul of Chapter 484 as interpreted by Missouri courts. Neither Chapter 351 nor the Missouri Secretary of State provide form corporate minutes to be used in lieu of actually holding an annual meeting. MPA has read Missouri's statutory requirements and drafted a form it believes to be compliant, gathers information from customers to complete the form, and then provides to customers corporate minutes which it represents to be, in its judgment, compliant with the legal requirements of Chapter 351. Although rudimentary, such actions are the exercise of legal judgment.

MPA tries to align this case with that of *In re Thompson*, in which the Missouri Supreme Court allowed William Thompson to sell "divorce kits" to Missouri residents, despite Thompson's lack of Missouri law license. 574 S.W.2d 365, 366 (Mo. banc 1978). The kits contained various forms relating to an action for an uncontested dissolution of marriage. *Id.* "Blank spaces, with instructions on practice forms, [were] provided for the insertion of specific items applicable to the parties involved in the dissolution." *Id.* The Missouri Supreme Court found that the sale of these kits was not the unauthorized practice of law, so long as Thompson refrained "from giving personal advice as to legal remedies or the consequences flowing therefrom." *Id.* at ·369. This case is distinguishable in two key ways. First, MPA provided completed documents to its customers. Although a small distinction, it is a bright line test that is repeatedly noted by Missouri Courts. "[C]harging a separate fee for the completion of legal forms by non-lawyers constitutes the unauthorized practice of law." *Carpenter*, 250 S.W.3d at 702. We can find no occasion where courts have permitted an unlicensed person or company to provide completed legal documents for a separate fee. Second, and more importantly, MPA is making legal judgments and representations regarding the effect of its documents. Thompson provided blank "kits" for customers to use to obtain a divorce but left it to the consumer to fill in the forms and did not make any representations as to the legal remedies or consequences associated with the use of those kits. MPA states in its letter to clients that, once the minutes have been signed and dated, "[y]our company will be in full compliance with the corporate minute records requirement." This is clearly beyond what was allowed in *Thompson*.

This case is more akin to *McKeage*. In *McKeage* plaintiffs brought suit against a boat retailer alleging that charging a $75 "document fee" to cover the costs of preparing and/or completing documents associated with the boat purchase constituted the unauthorized practice of law. 847 F.3d at 996. The prepared documents included the contract itself; a bill of sale; a power of attorney form; and title, license, and registration documents. *Id.* Analyzing Missouri law, the Eighth Circuit found that the forms filled out by the seller included documents Missouri has deemed legal in nature—namely, power of attorney forms—as well as forms that have not yet been addressed in Missouri. *Id.* at 1000–01. Because the power of attorney was a legal document, it was immaterial whether the person filling out the form exercised dis-

cretion in filling in the information. *Id.*;[5] *see also Bray v. Brooks*, 41 S.W.3d 7, 11–13 (Mo. App. W.D. 2001) (finding that broker engaged in the unauthorized practice of law by drafting: offer, counteroffer, an addendum, *a corporate resolution authorizing the sale of the corporate assets*, a promissory note, a security agreement to the note, a real estate lease, and a covenant not to compete).

We find a corporate minutes document to be similar to that of a power of attorney and a corporate resolution. Both have legal requirements and legal effect. Corporate minutes must meet the legal requirements of Chapter 351, and MPA exercised its judgment to read the requirements of that chapter, draft minutes it believes comply with those requirements, and represents to its customers that the documents MPA provides, once signed, place the customer in compliance with corporate minute record requirements of the State of Missouri. *See generally De Leon v. Saldana*, 745 S.W.2d 55, 57 (Tex. App. 1987) (referencing a "Unanimous Consent of Shareholders" as a legal document).

Although MPA does not contest that it does not currently meet the requirements for a recognized exception to Chapter 484, it asks us to, in effect, recognize a new exception for when there is no infringement on "customary legal corporate services." Missouri court's must "balance the protection of the public against a desire to avoid unnecessary inconvenience and expense." *In re First Escrow, Inc.*, 840 S.W.2d 839, 843 (Mo. banc 1992). MPA argues that internal records for corporate clients are so common that it is in the best interest of the public to allow non-lawyers to prepare the records. We agree that corporate minutes are often prepared by a corporate officer who many times is not a lawyer, but those corporate officers are rarely paid a separate fee for this duty. However, a company drafting its own documents is very different than an outside company advertising that it can prepare and provide these legal documents to a customer for a fee. Corporate documents are often prepared by attorneys to ensure that they are in compliance with the legal requirements of Chapter 484. We find no greater benefit to the public at large to allow MPA and other like companies to charge the public for the preparation of a legal document as opposed to having a licensed and trained attorney provide the same service. Despite MPA's contention that the concerns of protecting the public from "incompetent or unreliable persons" is not at issue in this case, we disagree. There are clear legal guidelines that must be followed by corporations in Missouri. MPA represented to Lucas Subway and the public that it can draft legal documents to comply with such regulations, which is the practice of law. Simply because there is no allegation that MPA performed its work negligently does not mean that it not the type of action from which the public should be protected.

We find that the circuit court erred in dismissing Count I of Lucas Subway's complaint alleging that MPA engaged in the unauthorized practice of law. We reverse and remand for further proceedings.[6]

---

5. Lucas Subway relies heavily on *Janson v. LegalZoom.com, Inc.*, 802 F.Supp.2d 1053 (W.D. Mo. 2011). In *Janson*, LegalZoom.com offered to customers the preparation of legal documents through the internet. *Id.* at 1054. LegalZoom.com utilized a series of questions to take customers through a decision tree of which document should be utilized. *Id.* at 1055. We agree with MPA that this series of questions makes *Janson* markedly different then the case at hand and not relevant to our discussion.

6. Lucas makes no challenge to the court's dismissal of Counts II, III, and IV alleging

## II.

Lucas Subway's final five points on appeal all challenge the circuit court's denial of class certification. This Court's review of a denial of class certification is for abuse of discretion. *Dale v. Daimler-Chrysler Corp.*, 204 S.W.3d 151, 161 (Mo. App. W.D. 2006). The second point relied on alleges that the circuit court erred in denying class certification based on the court's conclusion that the class definition was overbroad and indefinite.

### A. Overbroad

"A class definition that encompasses more than a relatively small number of uninjured putative members is overly broad and improper." *State ex rel. Coca-Cola Co. v. Nixon*, 249 S.W.3d 855, 861 (Mo. banc 2008).

MPA argues, and the circuit court held, that this case is similar to that of *State ex rel. Coca-Cola Co.* In *Coca-Cola Co.* the plaintiff sought class certification for all purchasers of fountain Diet Coke because the fountain Diet Coke contained saccharin, an ingredient not contained in bottled Diet Coke. *Id.* at 858–59. The Missouri Supreme Court found that the class was too broad because as much as eighty percent of the class were "uninjured" because they had no personal dislike of saccharin. *Id.* at 862. The court would be forced to conduct "mini-trials" to determine the subjective tastes of each class member to determine if they were dissatisfied and thus injured. *Id.* at 863. We find that this case requires no such inquiry.

In Missouri, no person or entity can practice law without a license. *See* Section 484.020. This ban is designed to protect the public from receiving legal advice or assistance from a person unqualified to give such advice or assistance. It is a requirement that cannot be waived by the consumer. *Carpenter*, 250 S.W.3d at 703. The consumer will always have a claim against a non-licensed person or entity performing the unauthorized practice of law, regardless of whether the legal work they received happened to be satisfactory. To hold otherwise would negate the legislature's decision that the license requirement be absolute. A consumer receiving unlicensed legal aid, whether satisfied or not, has an imputed injury because, to protect the public, Missouri mandates such aid be given by someone trained in the practice of law and yet their aid came from someone unqualified to offer such services. Whether some customers will decline to bring suit because, as MPA suggests, they are satisfied customers, does not change our analysis because such customers are free to opt out and not participate in this litigation. *See Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 230 (Mo. App. W.D. 2007). A "class may be certified even though the initial definition includes members who have not been injured or do not wish to pursue claims against the defendant." *Id.* at 230–31 (quoting *Elliott v. ITT Corp.*, 150 F.R.D. 569, 575 (N.D. Ill. 1992)). "[T]he question of injury to individual class members is deferred until after resolution of the common questions." *Id.* at 231.[7]

claims for money had and received and violations of the MMPA. Thus, we do not address those counts.

7. We do note that the inclusion of corporations that received a full refund may not be entitled to be part of the class because there no longer exists any underlying damage upon

which to establish treble damages. As noted, although Lucas was offered a refund, he declined payment and thus has an underlying damage upon which to base the treble damages. The Missouri Supreme Court, however, has made clear that courts should "err in close cases in favor of certification because the class can be modified as the case prog-

The putative class members in this case are limited to those that made approximately 1, 725 purchases, all of whom were injured because they did not received properly reviewed legal documents.

### B. Indefinite

 Likewise, the proposed class is not indefinite in nature. "The class definition must be sufficiently definite so that it is administratively feasible to identify members of the class." *Coca–Cola Co.*, 249 S.W.3d at 862. "The primary concern underlying the requirement of a class capable of definition is that the proposed class not be amorphous, vague, or indeterminate." *Id.* at 861. The circuit court held that the class was indefinite because class membership required proof of subjective criteria. "[C]lass membership must be based on objective, rather than subjective, criteria" to avoid "mini-hearings" to determine each class member's state of mind. *Id.* at 862. The court believed that it would be necessary to determine which class members were dissatisfied to determine what monies would be "unjust" for MPA to retain. As discussed above, however, any monies MPA received for legal work are unjustly held because MPA was not qualified to offer such a service. It does not matter whether a customer was satisfied with the legal work. The consumer paid for a service that MPA could not and did not provide—qualified legal services.

The circuit court erred in denying class certification based on its conclusion that the proffered class was overbroad and indefinite.

### III.

Lucas Subway's third point on appeal alleges that the circuit court erred in deny-

ing class certification because it erred in finding that this suit did not meet the requirements of Rule 52.08(b). To maintain a class action, a plaintiff must show that the suit is justified under Rule 52.08(b)(1), (b)(2), or (b)(3). Lucas Subway does not argue that it falls under the requirements of Rule 52.08(b)(1) or (b)(2), thus, we limit our discussion to 52.08(b)(3).

Rule 52.08(b)(3) states that as a prerequisite to class certification, the court must find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include:
>
> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;
>
> (D) the difficulties likely to be encountered in the management of a class action.

To qualify under Rule 52.08(b)(3), a plaintiff must prove (1) predominance and (2) superiority.

### A. Predominance

 The fundamental question in determining predominance under 52.08(b)(3) is "whether the group aspiring to class

---

resses." *State ex rel. McKeage v. Cordonnier*, 357 S.W.3d 597, 600 (Mo. banc 2012). Because this particular question was not ad-

dressed by the parties and briefed, we decline to address it leaving its resolution to the circuit court.

status is seeking to remedy a common legal grievance." *Dale*, 204 S.W.3d at 175.

The parties appear to be in agreement that the proposed class has a common legal grievance stemming from MPA's allegedly unlawful practice of law. Accordingly, for the purposes of this opinion, we will assume that this is true.

## B. Superiority

 MPA alleges, and the circuit court found, that a class action suit is not the superior method for adjudicating Lucas Subway's claims. MPA points to the AVC agreement it entered into with the Missouri Attorney General on July 29, 2013. On March 13, 2015, the Missouri Attorney General filed suit against MPA, alleging MPA violated the MMPA by using deception and misrepresentation in its solicitations. Specifically, the Attorney General claimed that MPA made it appear that its solicitations came from a government entity, namely the Secretary of State, and that recipients were required to pay $125 to file corporate minutes. To settle the case, MPA entered into an AVC with the Attorney General agreeing to alter the look and language of its mailings and also to include clear reference to its refund policy. Additionally, MPA paid to the state $2,000 in attorneys' fees and costs and a $3,500 penalty. Neither the Attorney General's Petition nor the AVC addressed any allegation regarding the unauthorized practice of law. The AVC does not prohibit MPA from soliciting customers from Missouri and from offering corporate minutes documents. The AVC also, by its specific terms, does not prohibit future suits by aggrieved parties.

MPA argues that "where the State agreement is providing monetary relief to the [proposed class members] anyway, a class action seeking those same monies is unnecessary." *Brown v. Blue Cross & Blue Shield of Mich., Inc.*, 167 F.R.D. 40, 45 n.18 (E.D. Mich. 1996). MPA thus contends that because, as part of the AVC, on a different legal claim, it was required to notify past purchasers of its products that they could seek a refund, this suit is unnecessary because it seeks recovery of those same funds. Lucas Subway notes that the refund letter it sent to its customers stated that if customers were not "satisfied" they could receive a refund by first returning the materials to MPA, requiring consumers to pay an upfront shipping cost. Further, the AVC made no claims regarding the unauthorized practice of law, a claim under which MPA, if guilty, is liable for treble damages.[8]

While we agree that both the Attorney General's suit and this suit seek damages for the same $125 paid by consumers, we do not agree that having the *right* to seek a refund under the AVC precludes an entity from instead seeking damages under a claim for unauthorized practice of law. As repeatedly noted by Lucas Subway, under section 484.010, an injured party is allowed to seek treble damages for the unauthorized practice of law. If Lucas Subway was indeed subjected to the unauthorized practice of law by MPA, Lucas Subway should not be prevented from full recovery of the damages to which it is entitled simply because it was offered a refund of the product purchase price. To do so would allow an accused party to avoid the treble damages by offering a full refund to customers upon the filing of the suit. It would also allow the Attorney General to force an

---

**8.** We note that the circuit court incorrectly refers to the treble damages as "discretionary," whereas section 484.20 states that a person found guilty of the unlawful practice of law *"shall be* subject to be sued for treble the amount which shall have been paid him or it for any service rendered . . . ." (emphasis added).

injured party to accept a remedy based on how the Attorney General decided to pursue the action. Once a refund is offered, either by consent judgment with the Attorney General or otherwise, under MPA's argument, an injured party would no longer be entitled to the additional statutorily authorized remedy treble damages. Just as no person may be forced to participate in a class action and may refuse to opt in or opt out and pursue their own independent action, the customers of MPA cannot be forced to accept the remedy of a refund under the AVC and forgo their rights to an independent cause of action under a different theory of recovery.

We find that the circuit court erred in finding that a class action was not a superior method of recovery for Lucas Subway.

### IV.

■ ▓▓ Lucas Subway next challenges the circuit court's finding that class certification was not warranted because it is a "waste of judicial resources." The circuit court found that the creation of a class would serve no useful purpose because all class members are entitled to a refund under the AVC. We disagree for the reasons stated above. The AVC provides an incomplete remedy to the class members. Further, to hold that the refund offer precluded a class action suit for the unlawful practice of law would allow for offenders to avoid the statutory remedy of treble damages anytime a suit was filed by simply offering a refund to potential class members thwarting the legislative intent. The cases cited by MPA are not instructive in this case. We can find no support that a state action bars a class action suit on a different claim and offering different remedies.

We find that the circuit court erred in denying class certification because MPA had offered refunds to the putative class members.

### V.

▓▓ Lucas Subway's fifth point on appeal challenges the circuit court's finding that Lucas Subway failed to meet the requirements of Rule 52.08(a) that the class have numerosity, commonality, typicality and adequacy. The party seeking class certification bears the burden of demonstrating that it has satisfied each prerequisite element of Rule 52.08(a). *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 74 (Mo. App. W.D. 2011); *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 307 (3rd Cir. 2008). "This burden is satisfied if there is evidence in the record, which if taken as true, would satisfy each and every requirement of the rule." *Dale*, 204 S.W.3d at 164–65.

### A. Numerosity

▓▓ As noted above, Lucas Subway's proposed class included all Missouri corporations that purchased corporate minutes from MPA. This included 170 purchases that had already received refunds and thus may lack damages upon which to bring suit against MPA for the unauthorized practice of law. The other 1, 555 purchasers, however, are clearly still outstanding and suitable to satisfy the numerosity component of Rule 52.08(a). We find that the circuit court erred in finding that the number of class members was speculative because it did not take into account whether a customer was satisfied with its purchase.

### B. Commonality

▓▓ Rule 52.08(a) also requires plaintiffs to demonstrate that there are questions of law or fact common to the class. The common question "must be of such a nature that it is capable of class-wide resolution" such that the determina-

tion of its truth or falsity will resolve an issue that is central to the validity of each claim. *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). "What matters to class certification is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* The circuit court believed that the question of customer satisfaction was a necessary inquiry to each class member and, thus, there could not be common answers across the class.

We disagree with the circuit court that this present case is analogous to *Kansas City Terminal Railway Company v. Industrial Commission*, 396 S.W.2d 678 (Mo. 1965). In *Kansas City Terminal*, the plaintiff sought to represent a class of railroads that were paying inspection fees. *Id.* at 680–81. The Missouri Supreme Court found that there was no evidence of a common interest among class members because there was no evidence that other railroads wanted to be free of the fee. *Id.* As discussed fully above, satisfaction and acceptance are immaterial to a claim for unauthorized practice of law. Customers cannot waive or accept legal work done by an unlicensed person or entity. Thus, the only question is whether MPA unlawfully provided legal documents to customers. A common answer may be given and, if the answer is yes, then those customers are entitled to damages whether or not they were otherwise satisfied with the product. In *Kansas City Terminal*, the proposed class members could acquiesce or willingly pay the fee and could not be presumed to be in commonality with the plaintiff. Such is not the case before us.

## C. Typicality

The commonality and typicality requirements often merge, because each serves as a guidepost for judging whether a class action is economical and "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Wal–Mart Stores*, 564 U.S. at 349 n.5, 131 S.Ct. 2541. As with commonality, the circuit court found that typicality was not met because it found that Lucas Subway was atypical in being dissatisfied with MPA's product and, yet, not seeking a refund. But, again, satisfaction cannot act as a defense to a claim of unlawful practice of law. If MPA provided legal services, it is liable for damages regardless of whether customers were ultimately satisfied. Thus, the only questions that matter are whether the class members all received the same type of services and whether those services were unlawful. All customers received the same form corporate minutes and paid the same amount for the product. Although they were personalized to each company's information, that specialization does not prevent a finding of typicality.

## D. Adequacy

▇▇▇▇▇ Finally, the last requirement of 52.08(a) is adequacy. The adequacy requirement seeks to determine whether the representative party will fairly and adequately protect the interests of the class. *See* Rule 52.08(a)(4). To satisfy Rule 52.08(a)(4), a plaintiff must demonstrate that class counsel is qualified and competent to conduct the litigation and that the plaintiff has no interests that are antagonistic to the other proposed class members. *Dale*, 204 S.W.3d at 172–73.

▇▇▇ The circuit court found Lucas Subway to be an inadequate class representative because it chose to proceed with a class action rather than simply accept the refund available under the AVC. "A representative who proposes the high transaction costs (notice and attorneys'

fees) be incurred at the class members' expense to obtain a refund that already is on offer is not adequately protecting the class members' interests." *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748, 752 (7th Cir. 2011). In *Aqua Dots*, however, plaintiffs sought a remedy that most buyers had already received. *Id.* In this case, Lucas Subway contends that, under section 484.010, customers are not only entitled to the $125 damages under the AVC but an additional $250 in mandatory statutory treble damages. Thus, the remedy sought is not duplicative and provides a real benefit to class members even with the added transaction costs of a lawsuit.

We find that the circuit court erred in denying class certification because Lucas Subway failed to meet the requirements of Rule 52.08(a).

## VI.

 Lucas Subway's final point on appeal alleges that the circuit court erred in denying class certification because failing to accept MPA's offered refund under the AVC stripped Lucas Subway of standing. Because standing is a question of law, review of the issue on appeal is *de novo. Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. banc 2007). "Reduced to its essence, standing roughly means that the parties seeking relief must have some personal interest at stake in the dispute, even if that interest is attenuated, slight or remote." *Ste. Genevieve Sch. Dist. R II v. Bd. of Aldermen of City of Ste. Genevieve*, 66 S.W.3d 6, 10 (Mo. banc 2002). The issue of class certification is antecedent to the issue of standing. *Mitchell v. Residential Funding Corp.*, 334 S.W.3d 477, 490 (Mo. App. W.D. 2010). "[T]he United States Supreme Court has found issues of class certification to be properly analyzed prior to standing as they are 'logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III

standing.'" *Id.* (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999)) (internal quotations omitted). Only once a class has been certified are standing requirements assessed "with reference to the class as a whole, not simply with reference to the individual named plaintiffs." *Id.*

We find the circuit court erred in finding that standing should be a bar to class certification at this stage. Further, as fully discussed above, we find that the circuit court erred in finding that Lucas Subway lacks damages simply because it was offered a refund.

## Conclusion

We find that the circuit court erred in granting summary judgment in favor of MPA. We further find that the circuit court erred in denying Lucas Subway's motion for class certification. We reverse and remand to the circuit court to certify a proper class and for further proceedings consistent with this opinion.

All concur